IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| GRACSHAWN THOMAS, | ) | CASE NO. 5:17CV1769 |
| | ) | |
| Petitioner, | ) | JUDGE PAMELA A. BARKER |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| WARDEN ED SHELDON, | ) | |
| | ) | **REPORT AND RECOMMENDA-** |
| Respondent. | ) | **TION RE PETITION OF** |
| | ) | **GRACSHAWN THOMAS FOR** |
| | ) | **WRIT OF HABEAS CORPUS** |

## Table of Contents

Introduction ............................................................................................................. 3

Facts ........................................................................................................................ 4

    A.    Underlying facts, conviction and sentence .................................................... 4

    B.    Direct Appeal ................................................................................................. 7

        1.    Ohio court of appeals ........................................................................... 7

        2.    Supreme Court of Ohio ........................................................................ 8

    C.    Post-conviction proceedings ......................................................................... 9

        1.    First Rule 26(B) application ................................................................ 9

        2.    Successive Rule 26(B) application .................................................... 13

    D.    Federal habeas petition ............................................................................... 15

Analysis ........................................................................................................... 18

    A.    Preliminary observations ........................................................... 18

    B.    Evidentiary hearing .................................................................. 19

    C.    Overview ................................................................................... 20

    D.    Ground One ............................................................................... 22

        1.    Sub-claim G ...................................................................... 22

        2.    Sub-claim E ...................................................................... 23

        3.    Sub-claims A, B, C, D ...................................................... 23

        4.    Sub-claim F ....................................................................... 31

    E.    Ground Two ............................................................................... 35

    F.    Ground Three ............................................................................ 35

    G.    Ground Four .............................................................................. 39

    H.    Ground Five............................................................................... 41

Conclusion ...................................................................................................... 41

**Introduction**

Before me[1] is the petition of Gracshawn Thomas for a writ of habeas corpus under 28 U.S.C. § 2254.[2]  Thomas was convicted in 2014 by a Summit County Common Pleas Court jury of aggravated murder with firearm specifications, having a weapon under disability and tampering with the evidence.[3]  Pursuant that sentence, he is currently incarcerated by the State of Ohio at the Mansfield Correctional Institution in Mansfield, Ohio where he is serving a sentence of 35 years to life.[4]

In his petition, Thomas raises five grounds for habeas relief.[5]  The State in its return of the writ[6] argues that four of the five grounds should be dismissed as procedurally defaulted and that the remaining ground should be dismissed as non-cognizable.[7]  Thomas filed a traverse wherein he contends that any procedural default is excused because of actual innocence and/or ineffective assistance of both trial and appellate counsel.[8]

For the following reasons I recommend that the petition by dismissed in part and denied in part as is more fully set forth below.

---

[1] The matter was referred to me under Local Rule 72.2 by United States District Judge Patricia A. Gaughan in a non-document order dated August 24, 2017. The case was reassigned to United States District Judge Pamela A. Barker pursuant to General Order 2019-13 in a non-document entry dated June 26, 2019, which order did not alter the referral.
[2] ECF No. 1.
[3] *Id.*
[4] See https://appgateway.drc.ohio.gov/OffenderSearch.
[5] ECF No. 1.
[6] ECF No. 23. The return of the writ was filed after the District Judge declined to accept a Report and Recommendation that this petition be dismissed as time-barred and returned the matter to me. ECF No. 20.
[7] ECF No. 23.
[8] ECF No. 28.

**Facts**

    *A.    Underlying facts, conviction and sentence*

The underlying facts were found by the state appeals court.[9]  On the morning of September 18, 2013, Alphonzo Golden was waiting at a traffic light in Akron when a tan Buick Rendezvous pulled up along the driver's side of his station wagon.[10]  Witnesses described the driver of the Rendezvous as an African-American male wearing a black hat and red hooded sweatshirt.[11]  The driver of the Rendezvous lowered the driver's window of his car, extended a gun toward Golden, fired multiple times, striking Golden twice, killing him, and then pulled around other traffic and sped away.[12]

A short time later, Thomas pulled into a nearby backyard in a tan Buick Rendezvous and began cleaning out the vehicle's interior.[13]  He was wearing a maroon hooded sweatshirt.[14]  He was then joined by one of his cousins who helped him clean out the Buick.[15]  Meanwhile, Thomas's girlfriend learned about the shooting, went to the scene, and there gave police Thomas's name as a possible suspect, along with the name of the cousin and another friend of theirs.[16]  An analysis of Thomas's cellphone data indicated

---

[9] Facts found by the state appeals court on its review of the record are presumed correct by the federal habeas court. 28 U.S.C. § 2254 (e)(1); *Mason v. Mitchell*, 320 F.3d 604, 614 (6th Cir. 2003) (citing *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981)).

[10] ECF No. 7, Attachment 2 (state court record) at 91 (Ohio appeals court opinion).

[11] *Id.*

[12] *Id.*

[13] *Id*. at 92.

[14] *Id*.

[15] *Id*.

[16] *Id*.

that his phone had been in the vicinity of the shooting at the time it occurred.[17]

A week after the shooting, police got a warrant to arrest Thomas.[18]  Early the next morning, police located the Rendezvous Thomas was driving the day of the shooting.[19] The vehicle had been painted black and set on fire.[20]  Thomas turned himself in later that day.[21]

At trial, Thomas denied knowing the victim and said he had no animosity toward him.[22]  Thomas further testified that the tan Rendezvous he was driving on the morning of the shooting belonged to a relative known as "Poon," and that he was out purchasing marijuana he intended to resell, with a plan to later return the vehicle to Poon in the backyard where he met his cousin.[23]  He stated that he needed to clean the Buick's interior because he realized that some of the marijuana he had packaged for resale had come loose and had fallen out of his pockets.[24]

Thomas argued in his defense that the evidence against him was purely circumstantial.[25]  Specifically, he asserted that although he was driving a similar Rendezvous on the day of the shooting, no one obtained a license number of the particular Rendezvous that was involved in the murder.[26]  Moreover, he noted that he was wearing a

---

[17] *Id.*
[18] *Id.*
[19] *Id.*
[20] *Id.*
[21] *Id.*
[22] *Id.*
[23] *Id.*
[24] *Id.*
[25] *Id*. at 94.
[26] *Id.*

maroon sweatshirt, not red, and that he was not wearing a black hat.[27]  He further noted that given the wide area within the coverage area of a cellphone tower, the fact that activity from his phone was picked up on a particular tower doesn't mean he was the shooter.[28] Finally, he stated that there was no evidence he either knew or had reason to kill the victim, that he even possessed a gun, or that destroyed Poon's Rendezvous.[29]

For its part, the State produced evidence that Thomas had some prior history with the victim that made Thomas concerned about his safety.[30]  Further, the State emphasized that at the time of the murder Thomas was driving the same make, model and color vehicle as witnesses saw was driven by the killer, and was wearing similar clothing.[31]  The State noted that immediately after the shooting Thomas's cellphone made several calls to his cousin's cellphone, and that the two men then met to clean out the interior of the vehicle.[32] A detective testified that the gun used in the murder would have ejected shell casings inside the shooter's vehicle.[33]  The victim's girlfriend testified that some months before the shooting one of Thomas's cousins was killed and at that time the victim became concerned for his safety.[34]  Thomas admitted that his cousin's death occurred at the victim's birthday party.[35]

---

[27] *Id*. at 93-94.
[28] *Id.*
[29] *Id*. at 94.
[30] *Id*. at 95.
[31] *Id.*
[32] *Id.*
[33] *Id.*
[34] *Id*. at 96.
[35] *Id*. at 97.

A jury found Thomas guilty of aggravated murder, with two firearm specifications; murder, with two firearm specifications; having a weapon while under disability; and tampering with evidence.[36]  On June 13, 2014, the trial judge sentence Thomas to an aggregate sentence of 35 years to life.[37]

B.    *Direct appeal*

Ohio court of appeals

On June 16, 2014, Thomas, through different counsel,[38] timely[39] filed a notice of appeal.[40]  In his brief in support,[41] Thomas raised the following assignments of error:

1.    The trial court erred as a matter of law when it allowed the introduction of inadmissible hearsay of the alleged victim in violation of Mr. Thomas's right to confront witnesses under the Sixth Amendment to the U.S. Constitution and Article I, Section 1, 10 & 16 of the Ohio Constitution.

2.    The trial court erred as a matter of law because the State failed to establish on the record sufficient evidence to support the charges levied against Mr. Clayton [*sic*] in violation of the Due Process clause of the 14th Amendment to the U.S. Constitution and Article I, Section 1, 10 & 16 of the Ohio Constitution.

---

[36] *Id*. at 6-9.

[37] *Id.*

[38] Thomas was represented at trial by retained counsel Michael Bowler and Robert Meeker (*id.* at 5,6) and initially by court-appointed counsel Paul Grant on appeal (*id*. at 15, 83), although the trial attorneys filed the notice of appeal (*id*. at 11). Thomas later retained Gary Levine as counsel during the pendency of the appeal (*id*. at 83-85) and the court permitted attorney Grant to withdraw (*id*. at 86).

[39] To be timely, a notice of direct appeal in Ohio must filed within 30 days of the date of the judgment being appealed. Ohio App. R. 4 (A). Here, the notice of appeal was filed within 3 days of the entry of the conviction and sentence.

[40] ECF No. 7. Attachment 2 at 11. Though retained counsel Levine sought to withdraw the brief initially filed by appointed counsel Grant (*id*. at 87-89), that motion was denied (*id*. at 90).

[41] *Id*. at 15-48.

3.      Mr. Clayton's convictions are against the manifest weight of the evidence possession [*sic*] in violation of the Due Process clause of the 14th Amendment to the U.S. Constitution and Article I, Section 1, 10 & 16 of the Ohio Constitution.[42]

The State filed a responsive brief[43] and on June 17, 2015 the Ohio court of appeals overruled all the assignments of error and affirmed the judgment of the trial court.[44]

<u>Supreme Court of Ohio</u>

Approximately 14 months after the decision of the Ohio appeals court, Thomas, *pro se*, filed a notice of appeal and motion for delayed appeal with the Supreme Court of Ohio.[45]  In the affidavit attached to the motion for a delayed appeal, Thomas stated that although he found out about the appeals court decision in his case just 5 days after it was entered, he did not timely file an appeal with the Supreme Court of Ohio within 45 days because he had not formally been in contact with his appellate counsel concerning the judgement of the appeals court and he had filed a Rule 26(B) application to reopen the appeal on the grounds of ineffective assistance of appellate counsel.[46]  He further told the Supreme Court of Ohio that he believed the pendency of his Rule 26(B) application would toll the time for filing an appeal to the Supreme Court.[47]  In any case, he stated, the incorrect belief about tolling "would not have changed the fact that my appeal was untimely due to counsel's failure to inform me of the decision in my case which prevented me from filing

---

[42] *Id*. at 20.
[43] *Id*. at 49-82.
[44] *Id.* at 91-100.
[45] *Id*. at 101. The filing was entered on August 10, 2016.
[46] *Id*. at 105.
[47] *Id.*

within the required time."[48]

The State did not respond.  On October 5, 2016, the Ohio Supreme Court denied the motion to file a delayed appeal.[49]

C.    *Post-conviction proceedings*

First Rule 26(B) application

On September 16, 2015—three months after the appeals court affirmed his conviction, and nearly a year before he moved the Ohio Supreme Court to file a delayed appeal—Thomas, *pro se*, filed a Rule 26(B) application to re-open his appeal.[50]  In his application Thomas set forth the following grounds:

1.    CONFRONTATION CLAUSE VIOLATION: A criminal defendant has a constitutional right to confront witnesses via the Sixth Amendment to the United States Constitution.  When a defendant fails to object to the violation of his constitutional rights at trial the error may still be reviewed under a plain error analysis.  *State v. Ricks*, 2010-Ohio-4659.  An appellate court reviews de novo the question of whether or not the admission of evidence violated a defendant's Sixth Amendment Confrontation Clause rights.  *State v. Patel*, 9th Dist. No. 24024, 2008-Ohio-4692.  Under the Confrontation Clause, hearsay of the deceased victim may not be admitted against the defendant.  *Davis v. Washington*, 547 U.S. 813, 833 (2006).

2.    INADMISSIBLE EVIDENCE: Thomas's due process rights were violated by allowing State Exhibit 16 (videotape of Thomas cleaning out a Buick Rendezvous) and State Exhibits 20-23 (picture of a Buick Rendezvous with paint and fire damage) to be admitted into trial [*sic*].  Although Thomas did not object to the admission of this evidence, he may still argue plain error.  *State v. Ricks*, 2010-Ohio-4659.

3.    JURY NOT PROPERLY INSTRUCTED:  A criminal defendant has a due process right to a properly instructed jury via the Fifth Amendment of the United States Constitution.  In the current instance, Thomas's jury was not properly instructed specifically (but not limited to) on weighing circumstantial evidence.

---

[48] *Id.*
[49] *Id*. at 118.
[50] *Id*. at 119.

4.    SUFFICIENCY OF THE EVIDENCE:  In the first and second arguments raised in this application Thomas challenges the admissibility of evidence used on convicting him.  In the second argument, Thomas challenges numerous inferences that were used in convicting him asserting that they have no probative value via *Hurt v. Charles, supra*.  Thomas's appellate counsel, as they show the evidence [was] insufficient and his conviction [was] in violation of due process, should have raised the following two arguments:

i.    Without use of State Exhibit 16 and/or State Exhibit[s] 20-23, and/or the inadmissible hearsay of Ms. Marcedes White, the evidence was insufficient to support Thomas's conviction with particular regards (but not limited to) the "prior calculation and design" and the underlying gun specification.

ii.    Even if State Exhibit 16 and/or State Exhibit[s] 20-23 and/or the statements of Ms. White are admissible, there is no evidence on which a proper inference can be based to establish the elements of this crime.  As previously stated, an inference based upon an inference has no probative value.  *Id.*  The inferences used to establish the elements of this crime have no probative value (see Argument Two), and the evidence is insufficient, because there is no evidence upon which a proper inference may be made to establish the elements of this crime.

5.    MANIFEST WEIGHT: A manifest weight challenge requires the court to examine whether the prosecution has met its burden of persuasion.  *State v. Thompkins*, 78 Ohio St. 3d 380, 390 (1997).  Two argument should have been raised in support of Thomas's manifest weight argument as they clearly show the jury lost its way and denied Thomas his right to due process and a fair trial.

i.    "Where the circumstances are irreconcilable upon the theory of the accused's innocence the jury are bound to so treat them.  It is only when the facts and circumstances are irreconcilable with his innocence that he can be convicted."  *Carter, supra*.

ii.    As state[d] in argument No. 2, an inference upon an inference has no probative value.  *Hunt v. Charles, supra*.  Even were the evidence discussed in argument No. 2 admissible, it would not change the fact that you cannot draw an inference from another inference.  Therefore, the conclusion of Thomas pulling shell casings out of the Buick seen in State Exhibit 16 should not have held any probative value in the mind of the jury.  The same can be said for State Exhibits 20-23 and the impermissible inferences drawn therefrom.  Without the use of any of this evidence or of inferences that have no probative value, there is a serious lack of evidence showing Thomas guilty of this crime.  Due to them being based solely upon another inference, the court should weigh the manifest weight of Thomas's conviction without the use of two conclusions: (1) Thomas was cleaning out shell casings out of the vehicle seen in State Exhibit 16 to mask his guilt; (2) Thomas lit the car seen in State Exhibits 20-23 on fire to destroy evidence and to mask his guilt.

6.    PROSECUTORIAL MISCONDUCT: "While [the prosecution] may strike hard blows, he is not at liberty to strike foul ones." *Berger v. United States*, 295 U.S. 78. In addition, the test for prosecutorial misconduct is whether the conduct complained of deprived the defendant of a fair trial. *State v. Fears*, 86 Ohio St. 3d 329. Furthermore, improper remarks of the prosecution include improper statements of law. *State v. Davie*, 1995 Ohio App. LEXIS 6064 [1995 WL 870019]. The conduct currently complained of is the repeated arguing of impermissible inferences by the prosecution (see Argument Two above). During Thomas's trial, the prosecution repeatedly attempted to persuade the jury that Thomas was removing shell casings from the vehicle seen in State Exhibit 16, notwithstanding that this was an impermissible inference to draw. Thomas is unable to cite the transcript pages of this error due to the unavailability of the record but has attached an affidavit pursuant to App. Rule 9 in support of this claim. These blows were "foul" as they invited the jury to draw inferences that violated Thomas's due process rights. Though Thomas did not object to this error at trial, he may still argue plain error. *Fears, supra.*

7.    COUNSEL INEFFECTIVE: The Sixth Amendment of the U.S. Constitution guarantees a defendant the effective assistance of counsel. Thomas's counsel failed to investigate a crucial fact relevant to the defense of his client. The axiom [*sic*] of the State's case against Thomas is the allegation that the Buick Rendezvous recovered from Harvey Street was the same Buick Rendezvous used in the drive-by shooting that killed Alphonzo Golden. Samples were taken to determine the presence of gunshot residue when the car was recovered. (TR 457, 461). However, no testing of these samples was ever completed. (TR 646-647). Thomas insisted that his counsel recover the results of these tests, asserting that he was innocent of the crime and there could not possibly be any gunshot residue in the vehicle. Thomas's counsel did not file a motion to compel the results of these tests, nor did counsel attempt to have his own samples drawn from the vehicle for testing. Compelling the results of the samples taken from the vehicle or arranging to have the car tested would be a "reasonable investigation" under the circumstances considering his client was insisting the evidence would be beneficial to his defense.[51]

The State responded in opposition, arguing that the motion to re-open was filed 91 days after the decision of the appellate court and was therefore untimely.[52] The State further asserted that no explanation for the late filing was given and so the Rule 26(B) application should be denied.[53] Thomas, through retained counsel, filed a reply, admitting

---

[51] *Id.* at 119–27.
[52] *Id.* at 132.
[53] *Id.*

that the Rule 26(B) application was late, but arguing that the appellate court's refusal to allow retained counsel to substitute his brief on direct appeal for the purportedly deficient one of appointed counsel constitutes "good cause" to now overlook the late filing and address the argument in the Rule 26(B) application.[54]  Thomas, *pro se*, also filed a responsive brief, arguing that as a *pro se* litigant he "did his best" to present his arguments "in a timely fashion," and now "respectfully ask[s] this court for leniency in this *1 day* delay."[55]

On March 30, 2016, the Ohio appeals court denied Thomas's Rule 26(B) application as untimely.[56]  The court found that Thomas had failed to raise any argument of good cause for the delay in his original application, waiting instead to present a good cause argument in his reply brief.[57]  The court then observed that it "will not generally consider arguments raised for the first time in reply."[58]

Thomas, through counsel, moved for reconsideration.[59]  Counsel in the attached affidavit maintained that while he "in good faith" believed that Thomas's *pro se* application was timely filed, he also "concedes that as computational error resulted in a filing on the 91st day."[60]  He concluded by arguing that the alleged merit in Thomas's arguments "should mitigate in favor of finding good cause [for the untimeliness] and [the appeals court should]

---

[54] *Id.* at 134–38.
[55] *Id.* at 139 (emphasis original).
[56] *Id.* at 140.
[57] *Id.*
[58] *Id.*
[59] *Id.* at 142.
[60] *Id.* at 148.

accept the application and militate [*sic*] the appeal."[61]  The State did not respond and, on June 1, 2016, the Ohio appellate court denied the motion to reconsider.[62]

Thomas, *pro se*, then filed an appeal from the decisions denying the motion to re-open and the motion to reconsider.[63]  The State waived filing a response.  On August 31, 2016, the Supreme Court of Ohio declined to accept jurisdiction.[64]

Successive Rule 26(B) application

On August 23, 2017—nearly one year after the Ohio Supreme Court ended proceedings in Thomas's first Rule 26(B) application to re-open his appeal—Thomas, through new counsel (who is current counsel for the federal habeas petition), filed a second Rule 26(B) application to re-open the original appeal.[65]  As grounds, Thomas alleged the following:

1.  Appellate counsel were[66] constitutionally ineffective by failing to raise trial counsel's constitutional ineffectiveness under the Sixth and Fourteenth Amendments of the federal constitution as follows:

    a.  Trial counsel failed to understand the cellphone records used by the State, put forth an alibi based on the misunderstanding of the cellphone records, and failed to investigate properly the available evidence.

    b.  Trial counsel failed to cross-examine and request jury instruction on "confirmation bias."

    c.  It was either prosecutorial misconduct and/or ineffective assistance of trial counsel to present the victim in false light to the jury, withhold from the jury the true reputation of the victim, especially in light of the State's opening statement and the pending charges against the victim for shooting at two

---

[61] *Id.*
[62] *Id.* at 149.
[63] *Id.* at 151.
[64] *Id.* at 167.
[65] *Id.* at 168.
[66] As noted, Thomas was initially represented by appointed counsel who filed the brief on appeal and then by retained counsel.

people in a car; withhold evidence of third-party guilt.  The Sixth and Fourteenth Amendment of the federal Constitution were violated.

d.      Thomas should have been granted a separate trial from his co-defendant since significant evidence pointed to co-defendant's guilt.

e.      Appellate counsel was constitutionally ineffective in failing to inform Thomas of the deadline for filing a post-conviction petition under ORC 2953.21 in violation of the Sixth and Fourteenth Amendments of the federal Constitution.

f.      Counsel was ineffective in failing to object under the confrontation clause of the federal Constitution concerning statements made by victim to his girlfriend concerning Thomas.

g.      The cumulative effects of the errors in this case detailed in 1 A-F above denied Thomas a fair trial and Due Process under the Fourteenth Amendment of the federal Constitution and Art. I Sec. 10 of the Ohio Constitution.[67]

The State opposed Thomas's attempt to file a second, successive Rule 26(B) application.[68]  On October 2, 2017, the Ohio appeals court denied the second application to re-open.[69]  The court found first that under Ohio law there is no right to file second, successive Rule 26(B) applications to re-open an appeal.[70]  In addition, the court further found that "once ineffective assistance of counsel has been raised and adjudicated, *res judicata* bars its re-litigation."[71]

Thomas, again through current counsel, then filed a notice of appeal to the Supreme Court of Ohio.[72]  After the State waived a response,[73] the Supreme Court of Ohio declined

---

[67] *Id.* at 172–78.

[68] *Id.* at 219.

[69] *Id.* at 222.

[70] *Id.* (citation omitted).

[71] *Id.* (citations omitted).

[72] ECF No. 23, Ex. 2 (supplemental state record) at 1.

[73] *Id.* at 18.

14

to accept jurisdiction.[74]

   D.   *Federal habeas petition*

Thomas, through counsel, appropriately filed[75] the present petition for habeas

corpus under 28 U.S.C. § 2254 on August 23, 2017. In the petition he alleges the following

grounds for relief:

**Ground One**: Appellate counsel were constitutionally ineffective by failing to raise

trial counsel's constitutional ineffectiveness under the Sixth and Fourteenth Amendments

to the federal Constitution as follows:

   A.   Trial counsel failed to understand the cellphone records used by the State,
put forth an alibi based on the misunderstanding of the cellphone records, and failed to
properly investigate the available evidence.

   B.   Trial counsel failed to cross-examine and request jury instruction on
"confirmation bias."

   C.   It was either prosecutorial misconduct and/or ineffective assistance of trial
counsel to present the victim in a false light to the jury; withhold from the jury the true
reputation of the victim especially in light of the State's opening statement and pending
charges against the victim for shooting at two people in a car; withhold evidence of third
party guilt. The Sixth and Fourteenth Amendment of the federal Constitution were
violated.

   D.   Thomas should have been granted a separate trial from his co-defendant since
significant evidence pointed to his co-defendant's guilt.

   E.   Appellate counsel was constitutionally ineffective in failing to inform
Thomas of the deadline for filing post-conviction petition under ORC 2953.21 to his
prejudice in violation of Sixth and Fourteenth Amendment of the federal Constitution.

---

[74] *Id.* at 19.

[75] ECF No. 20. Chief Judge Gaughan found that although the petition was filed beyond
the one-year time limit set by statute, Thomas was entitled to equitable tolling because his
attorney had effectively abandoned him without Thomas's knowledge, thus causing
Thomas to miss filing deadlines which, if met, would have tolled the limitations period.

*Gunner v. Welch*, 749 F.3d 511 (6th Cir. 2014) and *Williams v. Lazaroff*, Case No. 14-3441, 5-12-16, unpublished, Martinez and Trevino.

      F.      Counsel was ineffective in failing to object under the confrontation clause of the federal Constitution concerning statements made by victim to his girlfriend concerning Thomas.

      G.      The cumulative effect of the errors in this case detailed in A-F above denied Thomas a fair trial and Due Process under the Fourteenth Amendment of the federal Constitution and Art. I Sec. 10 of the Ohio Constitution.

**Ground Two:** The trial court allowed hearsay statements from the girlfriend of the victim allegedly made to his girlfriend/mother of his children, Marcedes White, in violation of Crawford and the Petitioner's right to confront witnesses found in the Sixth and Fourteenth Amendments of the U.S. Constitution.

**Ground Three**:  There was insufficient evidence to convict Thomas of Aggravated Murder and related charges under the Fourteenth Amendment of the federal Constitution.

**Ground Four**:  Appellate counsel failed to inform Thomas of the decision by the Court of Appeals in his direct appeal and was thus constitutionally ineffective under *Evitts* and the Sixth and Fourteenth Amendments of the U.S. Constitution.

**Ground Five**:  Mr. Thomas is actually innocent of the Aggravated Murder and related charges and is in custody for crimes he did not commit in violation of the Sixth and Fourteenth Amendments of the U.S. Constitution.[76]

The State in its return of the writ[77] argues that:

---

[76] ECF No. 1 at 19, 22, 23, 26, 27, 28, 29.

[77] ECF No. 23.  The return was filed after the District Judge found, as noted, that the petition should not be dismissed as time-barred because Thomas was entitled to equitable tolling. ECF No. 20.  The matter was then re-referred to me.  ECF No. 21.

Ground One – multiple claims of ineffective assistance of appellate counsel – should be dismissed as procedurally defaulted because these claims were raised in Thomas's first 26(B) application that was dismissed as untimely and raised again in the second 26(B) application that was denied as having no basis in Ohio law.[78]

Ground Two – hearsay/confrontation clause – should be dismissed as procedurally defaulted because the Ohio appeals court found that because Thomas did not object at trial to this testimony nor argue plain error on appeal, he had waived the issue.[79]

Ground Three – sufficiency of the evidence – should be denied on the merits since the decision of the Ohio appeals court on this issue was not an unreasonable application of *Jackson v. Virginia*.  Alternatively, Ground Three is procedurally defaulted because Thomas did not timely appeal from the state appellate court decision to the Supreme Court of Ohio.[80]

Ground Four – appellate counsel was ineffective for failing to timely inform Thomas of the appeals court decision on direct appeal – should be dismissed as procedurally defaulted because Thomas never presented this claim to any Ohio court. Specifically, he never raised this claim in either Rule 26(B) application.[81]

Ground Five – actual innocence – should be dismissed as non-cognizable as a stand-alone claim and not recognized as a basis to excuse procedural default due to *res judicata*

---

[78] ECF No. 23 at 24-28.
[79] *Id*. at 32-37.
[80] *Id*. at 38-44.
[81] *Id.* at 44-47.

or law of the case; *i.e.*, Chief Judge Gaughan has already found that Thomas cannot assert actual innocence because the evidence in support was available at trial.[82]

Thomas filed a traverse.[83]  Thomas maintains that the "devastating effect of counsel's ineptitude in this trial cannot be understated.  But then the misfortune of Mr. Thomas was compounded on appeal.  Mr. Levine was timely hired by the family of Mr. Thomas [for the direct appeal] yet did next to nothing.  The appointed lawyer [for the direct appeal] filed a poor brief missing many meritorious issues.  Mr. Levine's misconduct continued and prejudiced Thomas in the [first] 26(B) application, the delayed appeal to the Ohio Supreme Court and the lack of a post-conviction petition under ORC 2953.21."[84]

**Analysis**

    *A.*    *Preliminary observations*

Before proceeding further, I make the following preliminary observations:

1.    There is no dispute that Thomas is currently incarcerated by the State of Ohio as a result of his conviction and sentence by an Ohio court, and that he was so incarcerated at the time he filed this petition.  Thus, he meets the "in custody" requirement of the federal habeas statute vesting this Court with jurisdiction over the petition.[85]

2.    The is no dispute, as detailed above, that due to equitable tolling, this petition is properly filed.

---

[82] *Id*. at 47.
[83] ECF No.
[84] *Id*. at 36.
[85] 28 U.S.C. § 2254(a); *Ward v. Knoblock*, 738 F.2d 134, 138 (6th Cir. 1984).

3.      In addition, Thomas states,[86] and my own review of the docket confirms, that this is not a second or successive petition for federal habeas relief as to this conviction and sentence.[87]

4.      Moreover, subject to the procedural default arguments raised by the State, it appears that Thomas these claims have been totally exhausted in Ohio courts by virtue of having been presented insofar as possible through one full round of Ohio's established appellate review procedure.[88]

5.      Finally, Thomas is here represented by counsel[89] and so has not sought the appointment of counsel.  He has sought an evidentiary hearing.[90]

B.      *Evidentiary hearing*

As noted above, Thomas requests an evidentiary hearing in his prayer for relief in the petition.  In the brief accompanying the petition he also requests the authority to conduct discovery, take depositions, subpoena documents and orally argue the case.[91]  That said, Thomas has not filed a specific motion for an evidentiary hearing detailing exactly the scope of any such evidentiary hearing.

That precision is meaningful.  In *Cullen v. Pinholster*,[92] the United States Supreme Court held that federal habeas review "is limited to the record that was before the state

---

[86] ECF No. 1 at 13.
[87] 28 U.S.C. § 2254(b); *In re Bowen*, 436 F.3d 699, 704 (6th Cir. 2006).
[88] 28 U.S.C. § 2254(b); *Rhines v. Weber*, 544 U.S. 269, 274 (2005); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).
[89] ECF No. 1 at 1, 15.
[90] *Id*.
[91] *Id*. at 29.
[92] *Cullen v. Pinholster*, 563 U.S. 170 (2011).

court that adjudicated the claim on the merits."[93]  To be clear, the Court in *Pinholster* emphasized that its holding was not a wholesale bar on federal evidentiary hearings, but would restrict them to cases where the state court decision was not an adjudication on the merits.[94]  Further, an evidentiary hearing is appropriately denied when the existing state court record itself "precludes habeas relief."[95]

Here, because Thomas has not identified with particularity exactly what the scope of any federal evidentiary hearing would be, this Court cannot know if such a hearing involves a claim already decided on the merits in Ohio court for which *Pinholster* now bars a federal evidentiary hearing, or concerns a claim for which sufficient evidence already exists in the state record to preclude habeas relief.  In addition, as noted, there is no motion now before this Court to rule on.

Thus, to the extent the District Court perceives the language in the petition as a motion for an evidentiary hearing, I recommend that it be denied for the reasons given above.  If the District Court instead takes note that no motion is now before it for an evidentiary hearing, no further action is recommended.  I observe further that if this Report and Recommendation is adopted and the petition is denied and/or dismissed in its entirety, any matter of a hearing would be moot.

C.  *Overview*

As an initial matter, the classification of the grounds of relief into two groups will

---

[93] *Id*. at 181.
[94] *Id*.
[95] *Schriro v. Landrigan,* 550 U.S. 465, 474 (2007).

assist with the analysis of those grounds.  The first group relates to arguments asserted in Thomas's direct appeal to the court of appeals[96] and the motion to reopen that appeal under Ohio App. R. 26(B).[97]  Specifically, this group consists of:

- Ground 1.E. – ineffective assistance of appellate counsel for failure to argue ineffective assistance of trial counsel for making no objection to hearsay testimony given by the victim's girlfriend; and

- Ground 3 – insufficient evidence to support the conviction or, alternatively, the conviction is against the manifest weight of the evidence.

The court of appeals denied the Rule 26(B) motion on the ground that Thomas failed to timely file the motion.[98]  On objection to a report and recommendation for dismissal, Chief Judge Gaughan ruled that Thomas's counsel's conduct provided grounds for tolling the statute of limitations that would otherwise bar his petition.[99]  By implication that conduct also excuses the late filing of the Rule 26(B) motion, removing the bar to adjudicating those grounds otherwise imposed by procedural default related to the late filing.

The second group consists of those arguments made in support of Thomas's second and successive motion to reopen under Rule 26(B),[100] including:

- Grounds 1.A–E – ineffective assistance of appellate counsel for failure to argue ineffective assistance of trial counsel in the handling of Thomas's cellphone records, to cross examine and request instructions on confirmation bias, to present evidence on the true reputation of the victim, to request a separate trial, and to advise Thomas of the deadline for filing a post-conviction petition;

- Ground 1.G – the cumulative effect of errors committed at trial deprived Thomas a fair trial;

---

[96] ECF No. 7, Motion to Dismiss, Exhibit 2 (State Court Record) at 20.
[97] *Id.* at 119-29.
[98] *Id.* at 140–41.
[99] ECF No. 20.
[100] ECF No. 7, Motion to Dismiss, Exhibit 2, at 168-79.

- Ground 4 – ineffective assistance of appellate counsel for failure to advise Thomas of the decision of the court of appeals; and

- Ground 5 – actual innocence.

Chief Judge Gaughan's order relates to conduct of an attorney who entered an appearance on Thomas's behalf on the first Rule 26(B) motion.  That counsel had no involvement in the second motion, which new counsel filed, the same counsel representing Thomas on this petition.  As more fully explained below, the procedural default defense remains in play as to those grounds.

D.    *Ground One*

This ground concerns five sub-claims alleging ineffective assistance of Thomas's retained appellate counsel as to failing to raise issues on appeal related to trial counsel's performance, plus one sub-claim related to retained appellate counsel's failure to inform Thomas of the time for filing a Rule 26(B) application and one sub-claim asserting that the cumulative effect of the named errors denied Thomas a fair trial and due process.

Sub-claim G

I note first that cumulative error—sub-claim G—is not cognizable in federal habeas proceedings.[101]  Put simply, the United States Supreme Court has never held that individual constitutional errors that would not themselves support habeas relief can be cumulated to create such relief.[102]

---

[101] *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005).
[102] *Stober v. Warden, Chillicothe Corr. Inst.*, No. 19-3980, 2020 WL 1698589, at *3 (6th Cir. Feb. 18, 2020) (citing *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir.), *opinion corrected on denial of reh'g,* 307 F.3d 459 (6th Cir. 2002)).

Sub-claim E

Next, I note that sub-claim E—retained appellate counsel's error in failing to timely notify Thomas of the date of the direct appeal decision so that Thomas could timely file a Rule 26(B) application to re-open the appeal—is not a stand-alone claim that would itself procure habeas relief, but could be a cause for the procedural default that occurred when Thomas made an untimely filing of his 26(B) application and was also cited a basis for equitable tolling by the District Judge.  As the Supreme Court explained in *Martinez v. Ryan*, "Section 2254(i) provides that 'the ineffectiveness or incompetence of counsel during Federal or State post-conviction remedies shall not be a ground for [habeas] relief.'"[103] Thus, "while § 2254(i) precludes [a petitioner] from relying on the ineffectiveness of his post-conviction attorney as a [federal habeas] 'ground for relief,' it does not stop [a petitioner] from using it to establish 'cause' [to excuse a procedural default]."[104]

Sub-claims A, B, C, D

That said, the State has claimed that Ground One is procedurally defaulted. Specifically, the State asserts that the sub-claims asserted in Ground One were first asserted to an Ohio court in Thomas's second or successive Rule 26(B) application, which was submitted nearly one year after his first Rule 26(B) application was denied as untimely.[105] The second or successive application, as noted above, was itself dismissed by the Ohio appeals court on the grounds that Ohio law does not provide for successive or second Rule

---

[103] *Martinez v. Ryan*, 566 U.S. 1, 17 (2012).
[104] *Id*. (citation omitted).
[105] ECF No. 23 at 24-27.

26(B) applications.  Thus, the State contends, Ground One was never properly presented to an Ohio court and so is here procedurally defaulted.

Thomas, for his part, admits that the initial Rule 26(B) application was untimely filed but states that the misconduct/incompetence/abandonment of Mr. Levine, his then-counsel, caused the delay.[106]  This view was accepted by the District Court[107] as the basis for finding grounds for equitably tolling the running of the one-year habeas statute of limitations.

Initially, I note that it is well-settled that the Ohio Supreme Court has held that Ohio law does not provide for successive Rule 26(B) applications.[108]  Ohio law further states that once ineffective counsel has been raised and adjudicated, *res judicata* bars re-litigation.[109]  This interpretation of Ohio law is binding on a federal habeas court.[110]  Thus, any sub-claims of Ground One first asserted in the second Rule 26(B) application are procedurally defaulted unless Thomas can establish cause for that default and prejudice from this Court not reaching those sub-claims.

That said, it is important to note that Thomas argues that the first Rule 26(B) application was a "nullity," due to the ineffective assistance of attorney Levine.[111]  As such, he contends that his later filed Rule 26(B) application should be considered as an initial

---

[106] ECF No. 28 at 30.

[107] ECF No. 20.

[108] *Smith v. Warden, Toledo Corr. Inst.*, 780 F. App'x 208, 223 (6th Cir. 2019) (citations omitted).

[109] *Id.* (citation omitted).

[110] *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005).

[111] ECF No. 28 at 30.

application.[112]

However, the Sixth Circuit addressed and rejected a very similar claim in 2019 in *Smith v. Warden*.[113]  In *Smith*, the habeas petitioner argued, as does Thomas, that the prohibition on second Rule 26(B) applications should not apply "where a second Rule 26(B) application 'addresses entirely new instances of IAAC and errors committed by a different appellate attorney.'"[114]  In response, the *Smith* court noted that there is no authority for such a proposition.[115]

Moreover, and crucially, *Smith* also found no basis for claiming that a second Rule 26(B) application should be available to address errors committed by the attorney who represented the petitioner on the first application.[116]  In that regard, *Smith* pointed out that it is well-established that a Rule 26(B) application is a post-conviction remedy with no right to counsel.[117]  Accordingly, *Smith* concluded, "[b]ecause there is no right to counsel in Rule 26(B) proceedings, there can be no ineffective assistance of Rule 26(B) counsel claim."[118]

Similarly, the 2017 Sixth Circuit case of *Young v. Westbrook*[119] is also relevant. *Young* explained the contours of the "attorney abandonment" exception to the general rule

---

[112] *Id.*
[113] *Smith v. Warden, Toledo Corr. Inst.*, 780 F. App'x 208 (6th Cir. 2019).
[114] *Id.* at 223 (internal citation omitted).
[115] *Id.*
[116] *Id.*
[117] *Id.*
[118] *Id*.
[119] *Young v. Westbrooks*, 702 F. App'x 255 (6th Cir. 2017).

that even "egregious" attorney negligence will not provide cause to excuse procedural default by post-conviction counsel.  *Young* emphasized that the situation in *Maples v. Thomas*[120]—the case that found the narrow attorney abandonment exception—arose when the attorneys for the habeas petitioner actually left their law firm for other employment after filing the post-conviction petition without notifying the petitioner, thus causing the petitioner to miss the deadline for filing an appeal in the post-conviction matter.[121]  *Maples* noted that by actually leaving their original law firm and assuming new employment, the attorneys legally "disabled [their old law firm] from continuing to represent Maples"[since no other remaining attorneys were licensed to practice in petitioner's home state] and left him without "the assistance of any authorized attorney" during the time for filing an appeal."[122]

As such, the Supreme Court determined, these "uncommon facts" and "extraordinary circumstances" amounted to actual attorney abandonment.[123]

In *Young*, the Sixth Circuit addressed a claim that counsel had "effectively" abandoned a petitioner by missing filing deadlines, failing to raise the "best issues" in the post-conviction proceeding and "never communicat[ing]" with the petitioner during the course of his representation.[124]  The Sixth Circuit found that while all these alleged failings

---

[120] 565 U.S. 266 (2012).
[121] *Id*. at 275–78.
[122] *Id*. at 288–89.
[123] *Id*. at 280, 289.
[124] *Young*, 702 F. App'x at 262.

raise questions about counsel's effectiveness, they do not—separately or together—constitute abandonment.[125]

In particular, *Young* noted that, unlike the attorneys in *Maple* who actually left the law firm and made no further efforts to represent the petitioner, the counsel in *Young*, like here, filed motions in the post-conviction proceeding seeking to explain the late filing of the application.[126]  Moreover, *Young* concluded that the failure to assert what are purportedly the "best claims" for relief is merely "claim abandonment" and not "client abandonment."[127]  *Young* stated that merely disputing the merits of the claims asserted is not equivalent to the situation in *Maples* where the petitioner was "left without any functioning attorney of record."[128]  Finally, *Young* found that even gross negligence in communication by counsel was "dilatory and ineffective behavior," but was not equivalent to "renunciation or withdrawal, or a rejection or desertion of one's responsibilities, a walking away from the relationship."[129]

*Young* concluded that "[t]o our knowledge, no other court of appeals has held that a lawyer abandons his client despite filing a brief on his behalf, and we will not be the first to extend *Maples* in this fashion."[130]

These recent teachings of the Sixth Circuit provide significant guidance here, but *Smith* and *Young* must be read together with the holding of the District Court in this case

---

[125] *Id.*
[126] *Id.*
[127] *Id.*
[128] *Id.* (internal quotation and citation omitted).
[129] *Id.* at 264 (internal citations omitted).
[130] *Id.* at 265.

that found that attorney Levine's misconduct was sufficient to equitably toll the one-year limitations statute.[131]

In so doing, two important distinguishing features seem apparent when considering the District Court's ruling on equitable tolling in this context of procedural default.  First, the District Court's decision—by its own terms—involved only the question of equitable tolling and did not reach the issue of procedural default.  That distinction has been recognized by the Eleventh Circuit in *Downs v. McNeill*.[132]  Second, the District Court found effective abandonment in the context of equitable tolling essentially in the *misrepresentations* by counsel that he was working for Thomas, representations that were relied upon by Thomas such that he erroneously believed his federal habeas time clock was being tolled from the timely filing of a post-conviction petition.[133]  As such, the error here was more "egregious" than the mere negligence of miscalculating the time for filing but involves the "extraordinary" situation of making misleading statements in violation of the canons of legal ethics.[134]

That said, I recommend finding that the remainder of Ground One, not otherwise non-cognizable, is procedurally defaulted for several reasons.

First, even if attorney Levine's misrepresentations about filing the Rule 26(B) application on time caused the application to be rejected as untimely, the effective

---

[131] ECF No. 20.

[132] *Downs v. McNeil*, 520 F.3d 1311, 1321 (11th Cir. 2008).

[133] ECF No. 20 at 6.  "Levine's misrepresentations and effective abandonment of his client severed the agency relationship with Petitioner and met the first prong of the equitable tolling doctrine."

[134] *See Holland v. Florida*, 560 U.S. 631, 651-52 (2010).

abandonment found by the District Judge, as noted above, was strictly confined to equitable tolling grounds related to the statute of limitations.[135]  Whatever misrepresentations attorney Levine made to Thomas that resulted in Thomas filing a late *pro se* application and here in finding equitable tolling, the record also shows that attorney Levine prepared and submitted a brief to the appeals court in connection with that original Rule 26(B) application, which brief he unsuccessfully sought to have substituted for Thomas's *pro se* brief.  As previously noted by the Sixth Circuit in *Young*, a case arising in the context of procedural default, no appeals court has ever found attorney abandonment in the context of procedural default where the attorney filed a brief on behalf of his client.

Second, even if this Court were to conclude that the District Judge's order finding effective attorney abandonment also applies as "cause" in the context of procedural default, Thomas can show no "prejudice" from this Court not addressing either the claims he raised *pro se* to the state appeals court in the untimely Rule 26(B) application or the claims that were raised in the brief attorney Levine submitted in support of his unsuccessful attempt to get the appeals court to re-consider the order dismissing the Rule 26(B) application as untimely.

In both instances, only one of the claims raised in those briefs corresponds to a sub-claim asserted here in Ground One.

Specifically, Thomas's first *pro se* claim in the Rule 26(B) application concerned

---

[135] ECF No. 20 at 6, fn.4.  (Noting that the "motion to dismiss was limited to the statute of limitations" and insisting that "a full return of the writ and traverse should be ordered.")

trial counsel's failure to object to hearsay testimony from the victim.[136]  Attorney Levine restated that argument in his brief in support of reconsideration.[137]  Sub-claim F of Ground One of this petition states that trial counsel was infective for failing to object to hearsay statements made by the victim and repeated in trial by his girlfriend.

I note initially, even if that sub-claim F were now to be addressed here, it would not preserve for habeas review the other six sub-claims in Ground One.  Those claims were not presented to an Ohio court until nearly a year after the first Rule 26(B) application was adjudicated.  As the Supreme Court has stated, "inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial."[138]  But, that exception applies only to the initial-review collateral proceedings and does not apply to attorney errors in appeals from that initial proceeding or to *second or successive proceedings*.[139]

Further, except for sub-claim F regarding hearsay (which will be considered below on the merits) the remaining sub-claims of Ground One were not presented to an Ohio court until nearly a year later in the second Rule 26(B) application (sub-claims A, B, C, D) or they are not cognizable as a claim for habeas relief (sub-claims E, G).  As such, none of these six sub-claims are, as detailed above, saved by any cause and prejudice argument concerning attorney Levine's conduct during the first Rule 26(B) application but are pro-cedurally defaulted as they were new alternative arguments first asserted in the second Rule

---

[136] ECF No. 7, Attachment 2 at 120.

[137] *Id*. at 145.

[138] *Martinez*, 566 U.S. at 9.

[139] *Id.* at 16 (emphasis added).

30

26(b) application that the Ohio appeals court dismissed because Ohio does not permit a second Rule 26(B) application.

In that regard, Thomas has made no attempt to show any cause to excuse this second procedural default.[140]  Further, the record shows that Thomas was not acting diligently during the one year between attorney Levine's misconduct in March and April of 2016 and the second Rule 26(B) application containing the sub-claims of the current Ground One, which was filed by attorney Parker in August 2017.

Finally, as the District Court has already found, Thomas cannot show actual innocence to excuse the procedural default.[141]

Accordingly, I recommend finding that sub-claims A, B, C and D of Ground One be dismissed as procedurally defaulted.

<u>Sub-claim F</u>

This sub-claim asserts that Thomas's trial counsel was ineffective for failing to object under the confrontation clause of the Constitution to allegedly hearsay testimony by the victim's girlfriend that the victim was afraid of Thomas's cousin and co-defendant.[142] As he explains in the related claim set out in Ground Two, Thomas contends that the implication of this hearsay was that the victim was also afraid of Thomas, who was close to

---

[140] Thomas argues that if the Ohio court had reconsidered the decision to dismiss the original Rule 26(B) application it "would have ordered further briefings" that would have resulted in granting relief.  ECF No. 28 at 30.  Thomas offers no reason why any further briefing in April 2016 would have produced the new grounds for relief presented over a year later by a different attorney who was not involved in the case in 2016.

[141] ECF No. 20 at 5 fn.3.

[142] ECF No. 1.

his cousin with whom he was communicating by cellphone at the time of the killing.[143]

As noted, Thomas has established cause for the procedural default regarding sub-claim F of Ground One because, although the state appeals court dismissed as untimely filed the first Rule 26(B) application where this claim was asserted, the District Court has found that this Rule 26(B) application was late-filed because of the misrepresentations of attorney Levine.

However, even though cause for the procedural default is established, Thomas cannot establish prejudice arising from this Court not addressing sub-claim F. To show prejudice in a case involving ineffective assistance of trial counsel Thomas must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."[144]

Here, the Ohio appeals court in the direct appeal considered whether the trial court erred in admitting the hearsay testimony of the victim's girlfriend and whether admitting that testimony violated the confrontation clause.[145] The Ohio appeals court found that it would not reach the confrontation clause issue because Thomas's counsel had not raised it at trial, and had thus waived it.[146] It further found that the girlfriend's testimony was not hearsay because, under Rule 803(c) it did not involve an assertion of fact but concerned

---

[143] *Id.*
[144] *Strickland v. Washington*, 466 U.S. 668, 694 (1984).
[145] ECF No. 7, Attachment 2 at 91.
[146] *Id.* at 92.

the victim's state of mind.[147]

In *Apanovitch v. Houk*,[148] the Sixth Circuit examined Ohio Evid. R. 803(c) in similar circumstances to the present case.  In *Houk* witnesses testified that the victim was afraid of a man matching the accused's description.[149]  The Sixth Circuit then characterized Ohio Evid. R. 803(c) (which it noted was "identical" to the analogous federal rule) as saying that "a witness may testify that someone expressed to them fear of someone or something, but they may not testify as to that person's explanations of *why* they were afraid."[150]  In fact, *Houk* referred to Sixth Circuit authority which held "that no Supreme Court precedent existed that precluded, as violative of the defendant's due process rights, the admission of state-of-mind evidence that the murder victim feared the defendant."[151]

Similarly, the admission of this testimony did not implicate the confrontation clause. First, as noted, the Ohio appeals court did not reach this issue because it found the issue was waived by trial counsel's failure to object and appellate counsel's failure to argue plain error.[152]  Ohio's contemporaneous objection rule has been found to be an adequate and independent state law ground to bar federal habeas review.[153]  Next, as stated above, Thomas did not timely appeal this issue to the Supreme Court of Ohio.

---

[147] *Id.* at 93.
[148] *Apanovitch v. Houk*, 466 F.3d 460 (6th Cir. 2006).
[149] *Id.* at 487.
[150] *Id.* (emphasis original) (citations omitted).
[151] *Id.* (citation omitted). *Apanovitch* arose under prior to the adoption of AEDPA, and the Court here made a point to cite to Sixth Circuit precedent occurring after the adoption of AEDPA.
[152] ECF No. 7, Attachment 2 at 92.
[153] *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001).

However, assuming that this untimeliness is also excused for cause by attorney Levine's actions, Thomas cannot show prejudice from this Court not addressing the confrontation clause issue.  Simply put, the confrontation clause is only implicated by testimonial statements, while non-testimonial statements are subject to the normal rules pertaining to hearsay.[154]  As the federal habeas court recently found in *Holbrook v. Burt*,[155] statements made by a victim to his girlfriend and admitted at trial under Mich. R. Evid. 803(3) as state-of-mind exceptions to the hearsay rule—an identical situation to the one here—were "nontestimonial, and the Confrontation Clause is not implicated."[156]

As set forth above, in both the hearsay and confrontation clause contexts, objecting at trial or raising the failure to object on appeal would have been futile or without merit.  It is axiomatic that trial counsel is not ineffective for failing to raise a futile or meritless argument, motion or objection and appellate counsel is not ineffective for failing to assert such claims.[157]

Accordingly, sub-claim F is procedurally defaulted because Thomas cannot establish prejudice.[158]

Therefore, and for the reasons stated, I recommend finding that Ground One be

---

[154] *Holbrook v. Burt*, No. 2:13-CV-11235, 2020 WL 955916, at *17 (E.D. Mich. Feb. 27, 2020), *reconsideration denied,* No. 2:13-CV-11235, 2020 WL 1551136 (E.D. Mich. Apr. 1, 2020) (citations omitted).

[155] *Id.*

[156] *Id.*

[157] *Bennett v. Klee*, No. 11-14160, 2014 WL 4316020, at *1 (E.D. Mich. Sept. 2, 2014) (citations omitted).

[158] As stated above, Thomas cannot excuse the procedural default by actual innocence. ECF No. 20 at 5, fn.3.

dismissed in part as procedurally defaulted (sub-claims A, B, C, D, F) and in part as containing non-cognizable grounds for habeas relief (sub-claims E, G).

E.    *Ground Two*

In Ground Two Thomas claims that the trial court violated Thomas's confrontation clause rights when it allowed the hearsay statement by the victim's girlfriend as to the point that the victim was afraid of Thomas's cousin.

As noted above, the Ohio appeals court found that this claim was procedurally defaulted because trial counsel had not made a contemporaneous objection. As also noted, Ohio's contemporaneous objection rule is an adequate independent state law ground to foreclose federal habeas review. Finally, as was noted, even if this claim were not procedurally defaulted, admission of this testimony was proper and did not violate the confrontation clause.

In his traverse Thomas does not acknowledge that this claim in procedurally defaulted and makes no effort to excuse the default. He simply asserts without citation to authority that this testimony "clearly violates" the Sixth Amendment and was fundamental to the State's case.[159]

For the reasons stated, I recommend dismissing Ground Two as procedurally defaulted.

F.    *Ground Three*

Here, Thomas contends that there was insufficient evidence to convict him. He

---

[159] ECF No. 28 at 31.

contends that the case against him was purely circumstantial and weak.[160]

This claim was presented to the Ohio appeals court, which reviewed the claim under the well-established standard of *Jackson v. Virginia*.[161]  That standard states that the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.[162]  As is well-recognized, on habeas review, the question is not whether the trier of fact made the correct decision, but rather whether the decision was rational.[163]  Thus, the federal habeas court does not reweigh the evidence, re-evaluate the credibility of the witnesses or substitute its judgment for that of the jury.[164]  Moreover, circumstantial evidence alone is sufficient to support a conviction, and it is not necessary for the evidence to exclude every reasonable hypothesis except that of guilt.[165]

In addition, on federal habeas review, it is recognized that a claim of insufficient evidence is subject to two levels of deference—to the decision of the jury and then to the decision of the state appeals court.[166]  In other words, even if the federal habeas court were to conclude that the jury could not have found the petitioner guilty, that court must still

---

[160] *Id.* at 32.
[161] *Jackson v. Virginia*, 443 U.S. 307 (1979).  Here, the appeals court cited the Ohio case that incorporated *Jackson* into Ohio law.
[162] *Id.* at 319.
[163] *Herrera v. Collins*, 506 U.S. 390, 402 (1993).
[164] *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).
[165] *Johnson v. Coyle*, 200 F.3d 987, 992 (6th Cir. 2000) (citations omitted).
[166] *Brown*, 567 F.3d at 205.

defer to the state appellate court's sufficiency determination as long as it is not unreasonable.[167]

Here, the Ohio appeals court began by explicitly citing the clearly established federal law applicable to the review.[168]  The court then cited to authority holding that circumstantial evidence has the same weight as direct.[169]  It then noted that, viewed in the light most favorable to the State, the evidence at trial showed:

The victim had some prior history with Thomas that made the victim concerned for his safety;

At the time of the shooting Thomas was driving the same make, model and color vehicle as was the killer, was in the same part of the city and was wearing a similarly-colored sweatshirt;

Immediately after the shooting, Thomas's cellphone made several calls to his cousin's cellphone;

Shortly thereafter, Thomas pulled his vehicle behind a house and began to clean the inside of the vehicle—according to a detective, the type of gun used to kill the victim would have ejected shell casings into the interior of the shooter's vehicle;

As Thomas cleaned the inside of the vehicle, the cousin whose cellphone had received messages from Thomas's cellphone arrived to help him;

Finally, the night that charges were issued for Thomas, the Rendezvous he was

---

[167] *Id.*
[168] ECF No. 7, Attachment 2 at 91.
[169] *Id.* (citation omitted).

driving on the morning of the shooting was set on fire after being painted a different color.[170]

The appeals court, on reviewing this evidence, then concluded that:

Based on testimony from the victim's girlfriend, the victim was concerned for his safety after one of Thomas's cousins was killed and then began to drive his truck everywhere, so that the height of the truck would permit him to have a good view of his surroundings;

On the morning of the shooting, the victim's truck wouldn't start so he used a station wagon—suggesting that the killer had been waiting for an opportunity to kill the victim under more favorable conditions;

These facts support the finding that Thomas killed the victim with prior calculation and design;

The fact that Thomas drove the Rendezvous to a secure location immediately after the shooting and began cleaning out the interior with the assistance of his cousin—as well as the fact that the Rendezvous was set on fire after police began searching for Thomas— is sufficient circumstantial evidence to support the conviction for tampering with the evidence.[171]

Thomas now claims that cellphone records and video evidence that put him in the area of the killing, plus evidence that he was driving a "similar SUV," are "not enough" for the jury to "reach a subjective state of near certitude" as to the existence of his guilt as

---

[170] *Id.* (citations to the record omitted).
[171] *Id.* at 93-94.

to each element of the offense.[172]

I recommend finding that this ground be denied on the merits for the reason that the Ohio appeals court decision was not an unreasonable application of *Jackson*.  As noted above, this Court is required to accord deference to the jury decision that found Thomas guilty and also give deference to the finding of the Ohio appeals court that found that the jury's decision was supported by substantial evidence.  Here, the Ohio appeals court appropriately set forth the evidence as it related to each charge and concluded that a reasonable juror, viewing the evidence in the light most favorable to the prosecution, could find Thomas guilty.

G.      Ground Four

In Ground Four Thomas contends that his appellate counsel was ineffective for failing to timely notify him of the decision of the appeals court on direct review.[173]  As a consequence of this ineffectiveness, Thomas claims he was prejudiced by not filing a timely appeal to the Ohio Supreme Court.[174]

As noted, the District Court has already found that attorney Levine effectively abandoned Thomas by not timely informing him of the appellate court's decision and by promising to file a timely appeal with the Supreme Court of Ohio, but then not following through.[175]  While that finding was in the context of equitable tolling, I have already recommended that it be applied as cause to excuse procedural default—here, providing

---

[172] ECF No. 28 at 32.
[173] *Id.* at 33.
[174] *Id.*
[175] ECF No. 20 at 20 at 2.

cause for not filing a timely appeal with the Ohio Supreme Court.

But, that said, Thomas cannot establish prejudice from this Court not considering the issues he attempted to raise with the Ohio Supreme Court, which that court declined to consider.  Specifically, the issues raised in the delayed appeal were:

1.      Did the trial court err when it allowed the introduction of inadmissible hearsay of the victim in violation of the confrontation clause and the appellate court refused to consider as plain error?

2.      Did the appellate court err because the State failed to establish on the record sufficient evidence to support the charges levied against Thomas?

3.      Did the appellate court err in failing to find that Thomas's convictions were against the manifest weight of the evidence?

4.      Is appellate counsel ineffective when he fails to inform an appellant of the decision of the appellate court that resulted in Appellant missing a deadline for filing his appeal with the Supreme Court?[176]

There is no prejudice here because, as noted: (1) there was no inadmissible hearsay and (2) there was sufficient evidence.  Further, manifest weight of the evidence claims are a matter of state law and are non-cognizable in a federal habeas proceeding.[177]

I therefore recommend that Ground Four be dismissed.

---

[176] ECF No. 7, Attachment 2 at 105.
[177] *Little v. Brunsman*, No. 1:12-CV-145, 2014 WL 4354547, at *29 (N.D. Ohio Sept. 2, 2014) (citations omitted).

H.    *Ground Five*

In Ground Five Thomas raised a free-standing claim of actual innocence.  As such, it is non-cognizable.[178]  Further, even if considered as a gateway to excusing procedural default or a time-bar,[179] this Court has concluded that actual innocence is not available here.[180]

Thus, Ground Five should be dismissed.

**Conclusion**

For the reason stated, the petition of Gracshawn Thomas for a writ of habeas corpus should be dismissed in part and denied in part as is more fully set forth above.

Dated: May 15, 2020                         s/ William H. Baughman, Jr.
                                            United States Magistrate Judge

---

[178] *Herrera*, 506 U.S. at 400.
[179] *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013).
[180] ECF No. 20 at 5, fn.3.

**Objections**

Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days of service of this notice.  Failure to file timely objections within the specified time shall constitute a waiver of subsequent review, absent a showing of good cause for such failure.[*]

---

[*] *See* Local Rule 72.3(b); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).