# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **Gracshawn Thomas,** | **Case No. 5:17cv1769** |
| **Petitioner,** | |
| **-vs-** | **JUDGE PAMELA A. BARKER** |
| | **Magistrate Judge William Baughman, Jr.** |
| **Warden Ed Sheldon,** | |
| **Respondent** | **MEMORANDUM OPINION AND ORDER** |

This matter is before the Court upon the Report & Recommendation ("R&R") of Magistrate Judge William Baughman, Jr. (Doc. No. 29), which recommends that the Petition of Writ of Habeas Corpus filed by Petitioner Gracshawn Thomas pursuant to 28 U.S.C. § 2254 be dismissed in part and denied in part.  Petitioner has filed Objections to the R&R.  (Doc. No. 32.)

For the following reasons, Petitioner's Objections (Doc. No. 32) are overruled, the Report & Recommendation (Doc. No. 29) is adopted as set forth herein, and the Petition (Doc. No. 1) is denied.

## I.    Summary of Facts

Thomas's habeas petition challenges the constitutionality of his conviction and sentence for aggravated murder and other charges in the case of *State v. Thomas*, Summit County Court of Common Pleas Case No. Case No. CR 13 10 2888.  The state appellate court summarized the facts underlying Thomas's conviction as follows:

> {¶ 2} On the morning of September 18, 2013, Alphonzo Golden was waiting at a traffic light in Akron when a tan Buick Rendezvous pulled up along the driver's side of his station wagon. The driver of the Rendezvous, who, according to witnesses, was an African–American male wearing a black hat and red hooded sweatshirt, lowered the front passenger window of his vehicle, extended a gun toward Mr. Golden, and fired multiple shots, striking Mr. Golden twice and killing him. The driver of the Rendezvous then pulled around the other traffic at the intersection and sped away.

{¶ 3} A short time later, Mr. Thomas pulled into Joy Strickland's backyard in a tan Buick Rendezvous and immediately began cleaning out the vehicle's interior. He was wearing a "maroon" hooded sweatshirt.  One of Mr. Thomas's cousins arrived shortly thereafter, and he began helping Mr. Thomas clean out the vehicle. Meanwhile, Mr. Golden's girlfriend learned about the shooting and went down to the scene. When police asked her about possible suspects, she gave them Mr. Thomas's name along with the name of the cousin and a friend of theirs. An analysis of Mr. Thomas's cell phone data indicated that his phone had been in the same part of the city as the shooting at the time it occurred.

{¶ 4} A week after the shooting, the police issued charges for Mr. Thomas. Early the next morning, the Rendezvous that he was driving on the morning of the shooting was found by the police. It had been painted black and set on fire. Mr. Thomas turned himself into the authorities later that day.

{¶ 5} The Grand Jury indicted Mr. Thomas for aggravated murder with a firearm specification, murder with two firearm specifications, having weapons while under disability, and tampering with evidence. At trial, Mr. Thomas testified that he had never met Mr. Golden and had no animosity toward him. He said that, on the morning of the shooting, he was driving a tan Rendezvous that belonged to a relative of his known as "Poon." According to Mr. Thomas, he was out purchasing marijuana that he intended to sell to others. When he stopped at a store, however, he realized that some of the marijuana bundles that he had made up had fallen out of his pocket. That is why he was searching through the Rendezvous and cleaning it out in Ms. Strickland's backyard. He said that he drove the Rendezvous to Ms. Strickland's backyard because that is where he was supposed to return it to Poon.

{¶ 6} A jury found Mr. Thomas guilty of the offenses, and the trial court sentenced him to a total of 35 years to life imprisonment.

*State v. Thomas*, 2015 WL 3765579 (Ohio Ct. App. 9th Dist. June 17, 2015).[1]

## II.    Procedural History

### A.    State Court Proceedings

#### 1.    Trial Court Proceedings

---

[1] In his Objections, Thomas faults the Magistrate Judge for failing to discuss certain testimony and evidence.  (Doc. No. 32 at pp. 4-7.)  The Court will discuss this evidence later in the decision, in the context of Thomas's arguments regarding the applicability of the actual innocence exception to the procedural default of his claims, and his sufficiency of the evidence claim.

On October 29, 2013, the Summit County Grand Jury issued an indictment charging Thomas with: (1) one count of Aggravated Murder in violation of Ohio Rev. Code § 2903.01(A), with two firearm specifications (Count 1); (2) one count of Murder in violation of Ohio Rev. Code § 2903.02(A), with two firearm specifications (Count 2); (3) one count of Having Weapons While Under Disability in violation of Ohio Rev. Code § 2923.13(A)(3) (Count 3); and (4) one count of Tampering with Evidence in violation of  Ohio Rev. Code § 2921.12(A)(1) (Count 4).  (Doc. No.  7-2 at PageID# 70-73.) Thomas pleaded not guilty to the charges.  (*Id*. at PageID# 74).

The case proceeded to a trial by jury.  On June 9, 2014, Thomas was found guilty as charged.  (*Id*. at PageID# 75.)  On June 13, 2014, the state trial court sentenced him to an aggregate term of incarceration of thirty-five (35) years to life imprisonment. (*Id.* at PageID# 76-78.)

## 2.    Direct Appeal

Thomas, through counsel, filed a timely Notice of Appeal on June 16, 2014.  (*Id*. at PageID# 79.)  The state trial court appointed attorney Paul Grant to represent Thomas on appeal.  On December 1, 2014, Thomas, through appointed counsel Grant, filed an appellate brief, in which he raised the following three assignments of error:

> 1. The trial court erred as a matter of law when it allowed the introduction of inadmissible hearsay of the alleged victim in violation of Mr. Thomas's right to confront witnesses under the Sixth Amendment to the U.S. Constitution and Article I, Section 1, 10 & 16 of the Ohio Constitution.
>
> 2. The trial court erred as a matter of law because the State failed to establish on the record sufficient evidence to support the charges levied against Mr. Clayton [sic] in violation of the Due Process clause of the 14th Amendment to the U.S. Constitution and Article I, Section 1, 10 & 16 of the Ohio Constitution.
>
> 3. Mr. Clayton's [sic] convictions are against the manifest weight of the evidence possession [sic] in violation of the Due Process clause of the 14th Amendment to the U.S. Constitution and Article I, Section 1, 10 & 16 of the Ohio Constitution.

3

(*Id.* at PageID# 85.)

Meanwhile, Thomas hired attorney Gary Levine in April of 2014 to represent him on appeal. (Doc. No. 20 at p. 2.)  Levine visited Thomas in prison and spoke with him a number of times by phone.  (*Id.*)  *See also* Doc. No. 7-2 at PageID# 252-253.  According to Thomas, Levine promised to file the appeal; however, as noted above, Thomas's appellate brief was filed by appointed counsel, Mr. Grant, on December 1, 2014, instead.  (*Id.*)  In fact, Levine did not enter an appearance until December 4, 2014.  (Doc. No. 7-2 at PageID# 154.)

The state appellate court permitted appointed counsel Grant to withdraw on January 23, 2015. (*Id.* at PageID# 155.)  That same day, Levine filed a motion to strike Grant's brief, but the state appellate court denied the motion on February 9, 2015.  (*Id.* at PageID# 156-159.)  Levine did not file any briefing in the state appellate court on Thomas's behalf.

On June 17, 2015, the state appellate court affirmed Thomas's conviction and sentence.  *See State v. Thomas*, 2015 WL 3765579 (Ohio Ct. App. 9th Dist. June 17, 2015).  Thomas asserts that neither Levine nor Grant timely informed him of the decision.  (Doc. No. 20 at p. 2.)  He further states that Levine promised him that he would file a timely direct appeal to the Supreme Court of Ohio. (*Id.*)  Thomas did not, however, (either through counsel or *pro se*) file a timely appeal.

Rather, over a year later, on August 10, 2016, Thomas filed a *pro se* notice of appeal and motion for leave to file a delayed appeal in the Supreme Court of Ohio, seeking to appeal the state appellate court's June 17, 2015 decision affirming his convictions and sentence.  (*Id.* at PageID# 170-185.)  In an affidavit attached to his motion, Thomas offered the following explanation for his failure to timely appeal:

> 1)  I found out about the judgment of the Summit County Court of Appeals that was entered on the 17th day of June 2015, in Case No. 27405 on June 22, 2015.

4

2)  I was unable to file an appeal to this Court within forty-five (45) days of the Court of Appeals decision for the following reasons:

3)  I was never informed by my counsel that a decision was rendered in my case on appeal.  Due to the lack of communication, I was unable to timely file my appeal to this Honorable Court.

4)  I filed an Application to Reopen my Appeal pursuant to App. R. 26(B) as my appellate counsel was ineffective.  I was awaiting a decision on the filing prior to filing my appeal to this Court as I was already late and believed that the filing tolled my time.  The incorrect belief would not have changed the fact that my appeal was untimely due to counsel's failure to inform me of the decision in my case which prevented me from filing within the required time.

(*Id*. at PageID# 174.)  In the motion for leave, Thomas stated that, if granted leave to appeal, he would raise the following assignments of error:

I. Did the trial court err as a matter of law when it allowed the introduction of inadmissible hearsay of the alleged victim in violation of Mr. Thomas's right to confront witnesses under the Sixth Amendment to the U.S. Constitution and Article I, Sections 1, 10 & 16 of the Ohio Constitution and the appellate court refused to address the issue as plain error?

II. Did the trial court err as a matter of law because the State failed to establish on the record sufficient evidence to support the charges levied against Mr. Thomas in violation of the Due Process clause of the 14th Amendment to the U.S. Constitution and Article I, Sections 1, 10 & 16 of the Ohio Constitution?

III. Did the appellate court err in failing to find Mr. Thomas's convictions are against the manifest weight of the evidence in violation of the due process clause of the 14th Amendment to the U.S. Constitution and Article I, Sections 1, 10 & 16 of the Ohio Constitution?

IV. Is appellate counsel ineffective when he fails to inform an Appellant of the decision of the appellate court that resulted in Appellant missing the deadline for filing his appeal with the Supreme Court in violation of the Sixth Amendment to the U.S. Constitution?

 (*Id.* at PageID# 173.)  On October 5, 2016, the Supreme Court of Ohio denied the motion for leave

to file a delayed appeal.  (*Id.* at PageID# 187.)

5

### 3.    First 26(B) Application

Meanwhile, Thomas asserts that, after the state appellate court issued its direct appeal decision in June 2015, Levine assured him that he would file an Application to Reopen the Appeal pursuant to Ohio App. R. 26(B). [2]  (Doc. No. 7-2 at PageID#s 253.)  Thomas claims that he and Levine had several phone conversations about Levine filing the Application.  (*Id.*)  During one of these conversations, Levine told Thomas that he had mailed the Application to the state appellate court, but when Thomas checked the docket, he saw that it had not been filed.  (*Id.* at PageID# 254.)  Levine then told Thomas that he would drive it to the court himself.  (*Id.*)  Levine, however, never filed the 26(B) Application.  (*Id.*)

Instead, on September 16, 2015, Thomas filed a *pro se* Application for Reopening under Ohio App. R. 26(B) in the state appellate court.  (Doc. No. 7-2 at PageID# 188-198.)  Therein, he alleged that appellate counsel had provided ineffective assistance of counsel for failing to raise the following seven assignments of error on appeal:

> 1. CONFRONTATION CLAUSE VIOLATION: A criminal defendant has a constitutional right to confront witnesses via the Sixth Amendment to the United States Constitution.  When a defendant fails to object to the violation of his constitutional rights at trial the error may still be reviewed under a plain error analysis.  *State v. Ricks*, 2010- Ohio-4659.   An appellate court reviews de novo the question of whether or not the admission of evidence violated a defendant's Sixth Amendment Confrontation Clause rights.  *State v. Patel*, 9th Dist. No. 24024, 2008-Ohio-4692.  Under the Confrontation Clause, hearsay of the deceased victim may not be admitted against the defendant.  *Davis v. Washington*, 547 U.S. 813, 833 (2006).
>
> 2. INADMISSIBLE EVIDENCE: Thomas's due process rights were violated by allowing State Exhibit 16 (videotape of Thomas cleaning out a Buick Rendezvous) and State Exhibits 20-23 (picture of a Buick Rendezvous with paint and fire damage)

---

[2] Such an Application "shall be filed in the court of appeals where the appeal was decided within ninety days from journalization of the appellate judgment unless the applicant shows good cause for filing at a later time." Ohio App. R. 26(b).

6

to be admitted into trial [sic].  Although Thomas did not object to the admission of this evidence, he may still argue plain error.  *State v. Ricks*, 2010-Ohio-4659.

3.  JURY NOT PROPERLY INSTRUCTED:   A criminal defendant has a due process right to a properly instructed jury via the Fifth Amendment of the United States Constitution.  In the current instance, Thomas's jury was not properly instructed specifically (but not limited to) on weighing circumstantial evidence.

4.  SUFFICIENCY OF THE EVIDENCE:   In the first and second arguments raised in this application Thomas challenges the admissibility of evidence used on convicting him.  In the second argument, Thomas challenges numerous inferences that were used in convicting him asserting that they have no probative value via *Hurt v. Charles, supra*.  Thomas's appellate counsel, as they show the evidence [was] insufficient and his conviction [was] in violation of due process, should have raised the following two arguments:

i.  Without use of State Exhibit 16 and/or State Exhibit[s] 20-23, and/or the inadmissible hearsay of Ms. Marcedes White, the evidence was insufficient to support Thomas's conviction with particular regards (but not limited to) the "prior calculation and design" and the underlying gun specification.

ii. Even if State Exhibit 16 and/or State Exhibit[s] 20-23 and/or the statements of Ms. White are admissible, there is no evidence on which a proper inference can be based to establish the elements of this crime.  As previously stated, an inference based upon an inference has no probative value.  *Id*.  The inferences used to establish the elements of this crime have no probative value (see Argument Two), and the evidence is insufficient, because there is no evidence upon which a proper inference may be made to establish the elements of this crime.

5.  MANIFEST WEIGHT: A manifest weight challenge requires the court to examine whether the prosecution has met its burden of persuasion.  *State v. Thompkins*, 78 Ohio St. 3d 380, 390 (1997).   Two arguments should have been raised in support of Thomas's manifest weight argument as they clearly show the jury lost its way and denied Thomas his right to due process and a fair trial.

i.  "Where the circumstances are irreconcilable upon the theory of the accused's innocence the jury are bound to so treat them.  It is only when the facts and circumstances are irreconcilable with his innocence that he can be convicted." *Carter, supra*.

ii.  As state[d] in argument No. 2, an inference upon an inference has no probative value.  *Hunt v. Charles, supra*.  Even were the evidence discussed in argument No. 2 admissible, it would not change the fact that you cannot draw

an inference from another inference. Therefore, the conclusion of Thomas pulling shell casings out of the Buick seen in State Exhibit 16 should not have held any probative value in the mind of the jury. The same can be said for State Exhibits 20-23 and the impermissible inferences drawn therefrom.  Without the use of any of this evidence or of inferences that have no probative value, there is a serious lack of evidence showing Thomas guilty of this crime.  Due to them being based solely upon another inference, the court should weigh the manifest weight of Thomas's conviction without the use of two conclusions: (1)  Thomas  was cleaning out shell casings out of the vehicle seen in State Exhibit 16 to mask his guilt; (2) Thomas lit the car seen in State Exhibits 20-23 on fire to destroy evidence and to mask his guilt.

6.  PROSECUTORIAL MISCONDUCT: "While [the prosecution] may strike hard blows, he is not at liberty to strike foul ones."  *Berger v. United States*, 295 U.S. 78. In addition, the test for prosecutorial misconduct is whether the conduct complained of deprived the defendant of a fair trial.  *State v. Fears*, 86 Ohio St. 3d 329. Furthermore, improper remarks of the prosecution include improper statements of law. *State v. Davie*, 1995 Ohio App. LEXIS 6064 [1995 WL 870019].  The conduct currently complained of is the repeated arguing of impermissible inferences by the prosecution (see Argument Two above).  During Thomas's trial, the prosecution repeatedly attempted to persuade the jury that Thomas was removing shell casings from the vehicle seen in State Exhibit 16, notwithstanding that this was an impermissible inference to draw.  Thomas is unable to cite the transcript pages of this error due to the unavailability of the record but has attached an affidavit pursuant to App. Rule 9 in support of this claim.  These blows were "foul" as they invited the jury to draw inferences that violated Thomas's due process rights.   Though Thomas did not object to this error at trial, he may still argue plain error.  *Fears, supra*.

7.   COUNSEL INEFFECTIVE:  The Sixth Amendment of the U.S. Constitution guarantees a defendant the effective assistance of counsel.   Thomas's counsel failed to investigate a crucial fact relevant to the defense of his client.  The axiom [sic] of the State's case against Thomas is the allegation that the Buick Rendezvous recovered from Harvey Street was the same Buick Rendezvous used in the drive-by shooting that killed Alphonzo Golden.  Samples were taken to determine the presence of gunshot residue when the car was recovered.  (TR 457, 461).  However, no testing of these samples was ever completed.  (TR 646-647).  Thomas insisted that his counsel recover the results of these tests, asserting that he was innocent of the crime and there could not possibly be any gunshot residue in the vehicle.   Thomas's counsel did not file a motion to compel the results of these tests, nor did counsel attempt to have his own samples drawn from the vehicle for testing. Compelling the results of the samples taken from the vehicle or arranging to have the car tested would be a "reasonable investigation" under the circumstances considering his client was insisting the evidence would be beneficial to his defense.

(*Id.*)

The State filed a Motion to Dismiss, in which it argued that Thomas's Application was filed 91 days after the decision of the appellate court and was therefore one day late. (*Id.* at PageID# 201.) The State further asserted that no explanation for the late filing was given and so Thomas's Application should be denied. (*Id.*) On Thomas's behalf, Levine filed a reply, admitting that Thomas's *pro se* 26(B) Application was late, but arguing that the appellate court's refusal to allow retained counsel to substitute his brief on direct appeal for the purportedly deficient one of appointed counsel constituted "good cause" to overlook the late filing. (*Id.* at PageID# 203-208.) In addition, Levine asserted that the state appellate court should consider the following claims: (1) "Appellant's counsel failed to raise a specific assignment of error relating to ineffective assistance of trial counsel in failing to object to the admission of inadmissible hearsay statements;" and (2) "Appellant's counsel failed to argue Plain Error in the direct appeal as to violations of the Constitution's Confrontation Clause." (*Id.* at PageID# 205.)

Thomas also filed a *pro se* response, arguing that he "did his best" to present his arguments "in a timely fashion," and now "respectfully ask[s] this court for leniency in this 1 day delay." (*Id.* at PageID# 208.)

On March 30, 2016, the state appellate court denied Thomas's *pro se* 26(B) Application as untimely, as follows:

> Appellant Gracshawn Thomas has applied for reopening of his appeal under Appellate Rule 26(B). Under Rule 26(B)(1), an application to reopen "shall be filed in the court of appeals where the appeal was decided within ninety days from journalization of the appellate judgment unless the applicant shows good cause for filing at a later time." This Court decided Mr. Thomas's appeal on June 17, 2015. Mr. Thomas did not file his application to reopen until September 16, 2015, which was more than 90 days later. The application, therefore, is untimely. Mr. Thomas also did not argue that there was good cause for the delay in his application, waiting to attempt to explain the delay

until his reply to the State's memorandum in opposition.  This Court, however, will generally not consider arguments raised for the first time in reply.  *See State v. Newman,* 9th Dist. Summit No. 23038, 2006-Ohio-408 l, 1 6 n. l. The application for reopening is denied.

(*Id.* at PageID# 209.)  Levine filed a Motion for Reconsideration on Thomas's behalf.  (*Id.* at PageID# 211-217.)  In an affidavit attached to the Motion, Levine maintained that, while he "in good faith" believed that Thomas's *pro se* application was timely filed, he "concedes that a computational error resulted in a filing on the 91st day."  (*Id.*)  Levine urged the court to consider the following claims of ineffective assistance of appellate counsel:  (1) failure to argue plain error where trial counsel failed to object to testimony regarding statements made by the victim to  his girlfriend, on the basis of the Confrontation Clause; (2) improper jury instructions regarding circumstantial evidence; and (3) failure to raise plain error where trial counsel failed to object to prosecutorial misconduct.  (*Id.* at PageID# 214.)  He concluded by arguing that the alleged merit in Thomas's arguments "should mitigate in favor of finding good cause" for the untimeliness.  (*Id.*)

On June 1, 2016, the state appellate court denied the Motion to Reconsider.  (*Id.* at PageID# 218-219.)  Thomas then filed a *pro se* appeal from the decisions denying the Application and the Motion to Reconsider.  (*Id.* at PageID# 220-221.)  On August 31, 2016, the Supreme Court of Ohio declined to accept jurisdiction.  (*Id.* at PageID# 236.)

**4.      Second 26(B) Application**

Over a year later, on August 23, 2017, Thomas, through new counsel John Parker,[3] filed a second Application to Reopen his Appeal pursuant to Ohio App. R. 26(B)(2)(b).  (*Id.* at PageID# 237- 247.)  Therein, Thomas argued the following grounds for relief:

---

[3] Mr. Parker is also Thomas's counsel in these habeas proceedings.

10

1. Appellate counsel were constitutionally ineffective by failing to raise trial counsel's constitutional ineffectiveness under the Sixth and Fourteenth Amendments of the federal constitution as follows:

a. Trial counsel failed to understand the cellphone records used by the State, put forth an alibi based on the misunderstanding of the cellphone records, and failed to investigate properly the available evidence.

b. Trial counsel failed to cross-examine and request jury instruction on "confirmation bias."

c. It was either prosecutorial misconduct and/or ineffective assistance of trial counsel to present the victim in [a] false light to the jury, withhold from the jury the true reputation of the victim, especially in light of the State's opening statement and the pending charges against the victim for shooting at two people in a car; [and] withhold evidence of third-party guilt. The Sixth and Fourteenth Amendment of the federal Constitution were violated.

d. Thomas should have been granted a separate trial from his codefendant since significant evidence pointed to [his] co-defendant's guilt.

e. Appellate counsel was constitutionally ineffective in failing to inform Thomas of the deadline for filing a post-conviction petition under ORC 2953.21 in violation of the Sixth and Fourteenth Amendments of the federal Constitution.

f. Counsel was ineffective in failing to object under the confrontation clause of the federal Constitution concerning statements made by [the] victim to his girlfriend concerning Thomas.

g. The cumulative effects of the errors in this case detailed in 1 A-F above denied Thomas a fair trial and Due Process under the Fourteenth Amendment of the federal Constitution and Art. I Sec. 10 of the Ohio Constitution.

(*Id.*)

On October 2, 2017, the state appellate court denied Thomas's second 26(B) Application, as

follows:

Appellant Gracshawn Thomas has applied for reopening of his appeal under Appellate Rule 26(B).  He previously applied for reopening in September 2015, which this Court denied.   The Ohio Supreme Court has held that "there is no right to file successive applications for reopening" under Rule 26(B).  *State v. Williams*, 99 Ohio St.3d 179, 2003-Ohio-3079, ¶ 12.   In addition, "[o]nce ineffective assistance of counsel has been

11

raised and adjudicated, *res judicata* bars its relitigation."  *Id*. at 10, *quoting State v. Cheren*, 73 Ohio St.3d 137, 138 (1995); *State v. Twyford*, 106 Ohio St.3d 176, 2005-Ohio-4380, ¶ 6.  Mr. Thomas's application for reopening is denied.

(*Id*. at PageID# 291.)

Thomas, through counsel, then filed a notice of appeal to the Supreme Court of Ohio.  (Doc. No. 23-2 at PageID# 425)  The Supreme Court of Ohio declined jurisdiction on February 14, 2018.

(*Id*. at PageID# 443.)

### B.    Federal Habeas Proceedings

On August 23, 2017, Thomas, through counsel, filed a Petition for Writ of Habeas Corpus in this Court and asserted the following grounds for relief:

I.    Appellate counsel were constitutionally ineffective by failing to raise trial counsel's constitutional ineffectiveness under the Sixth and Fourteenth Amendments to the federal Constitution as follows:

   A.    Trial counsel failed to understand the cellphone records used by the State, put forth an alibi based on the misunderstanding of the cellphone records, and failed to properly investigate the available evidence.

   B.    Trial counsel failed to cross-examine and request jury instruction on "confirmation bias."

   C.    It was either prosecutorial misconduct and/or ineffective assistance of trial counsel to present the victim in a false light to the jury; withhold from the jury the true reputation of the victim especially in light of the State's opening statement and pending charges against the victim for shooting at two people in a car; [and] withhold evidence of third party guilt. The Sixth and Fourteenth Amendment[s] of the federal Constitution were violated.

   D.    Thomas should have been granted a separate trial from his co-defendant since significant evidence pointed to his co-defendant's guilt.

   E.    Appellate counsel was constitutionally ineffective in failing to inform Thomas of the deadline for filing [a] post-conviction petition under ORC 2953.21 to his prejudice in violation of Sixth and Fourteenth Amendment[s] of the federal Constitution. *Gunner v. Welch,* 749 F.3d 511 (6th Cir. 2014)

12

and *Williams v. Lazaroff*, Case No. 14-3441, 5-12-16, unpublished, *Martinez* and *Trevino*.

  F. Counsel was ineffective in failing to object under the confrontation clause of the federal Constitution concerning statements made by [the] victim to his girlfriend concerning Thomas.

  G. The cumulative effect of the errors in this case detailed in A-F above denied Thomas a fair trial and Due Process under the Fourteenth Amendment of the federal Constitution and Art. I, Sec. 10 of the Ohio Constitution.

 II. The trial court allowed hearsay statements . . . [that] the victim allegedly made to his girlfriend/mother of his children, Marcedes White, in violation of *Crawford* and the Petitioner's right to confront witnesses found in the Sixth and Fourteenth Amendments of the U.S. Constitution.

 III. There was insufficient evidence to convict Thomas of Aggravated Murder and related charges under the Fourteenth Amendment of the federal Constitution.

 IV. Appellate counsel failed to inform Thomas of the decision by the Court of Appeals in his direct appeal and was thus constitutionally ineffective under *Evitts* and the Sixth and Fourteenth Amendments of the U.S. Constitution.

 V. Mr. Thomas is actually innocent of the Aggravated Murder and related charges and is in custody for crimes he did not commit in violation of the Sixth and Fourteenth Amendments of the U.S. Constitution.

(Doc. No. 1.)

  On October 17, 2017, Respondent filed a Motion to Dismiss on the grounds that the Petition was time-barred by the statute of limitations established by the Antiterrorism and Effective Death Penalty Act ("AEDPA") in 28 U.S.C. §2244(d).  (Doc. No. 7.)  Thomas opposed the Motion.  (Doc. No. 12.)  On August 7, 2018, Magistrate Judge Baughman issued a Report & Recommendation that the Motion be granted and the Petition be dismissed as time-barred.  (Doc. No. 17.)  Thomas timely objected.  (Doc. No. 19.)

13

On September 28, 2018, then-assigned District Judge Patricia Gaughan issued a Memorandum Opinion & Order in which she declined to accept the R&R.  (Doc. No. 20.)  Therein, Judge Gaughan found, in relevant part:

> Here, Petitioner has presented facts sufficient to establish that Levine engaged in egregious behavior that constitutes an extraordinary circumstance sufficient for equitable tolling. Levine assured Petitioner on multiple occasions that he would perform tasks that he never performed. Worse, he told Petitioner that he had mailed the application to reopen when, in fact, he had not and then promised that he would drive the motion to the court himself but never did so. Levine's misrepresentations and effective abandonment of his client severed the agency relationship with Petitioner and meet the first prong of the equitable tolling doctrine.
>
> The Court also finds that Petitioner has acted with diligence in pursuing his rights. Based on Levine's assurances that he was acting on Petitioner's behalf, including that he had, in fact, filed the application to reopen, Petitioner had no reason to believe that Levine was failing to represent him. Once he discovered Levine's misrepresentations, Petitioner acted on his own behalf in filing the application to reopen pro se, submitting it just one day late. He then continued to diligently pursue his rights, including by filing a timely motion for reconsideration of the denial of the application to reopen and a timely appeal to the Ohio Supreme Court.

(*Id*. at pp. 5-6.)  In addition, in a footnote, Judge Gaughan agreed with the Magistrate Judge's conclusion that "Petitioner cannot assert actual innocence because the evidence was available at the time of trial."  (*Id*. at fn 3.)  Judge Gaughan then re-referred the matter to Magistrate Judge Baughman for consideration of Thomas's grounds for relief and any applicable procedural defenses.  (*Id*. at p. 6.)

On October 17, 2018, Respondent filed a Return of Writ and supplemental state court record.  (Doc. No. 23.)  Thomas thereafter filed a Traverse on January 14, 2019.  (Doc. No. 28.)  The case was re-assigned to the undersigned on June 26, 2019.

On May 15, 2020, Magistrate Judge Baughman issued a Report & Recommendation that Thomas's Petition be dismissed in part and denied in part.  (Doc. No. 29.)  After receiving several

extensions of time, Thomas filed an Objection on July 2, 2020.  (Doc. No. 32.)  He subsequently filed a Notice of Supplemental Authority (Doc. No. 33) on August 15, 2020.  (Doc. No. 33.)

## II.     Standard of Review

Parties must file any objections to a report & recommendation within fourteen days of service. Fed. R. Civ. P. 72(b)(2).  Failure to object within this time waives a party's right to appeal the district court's judgment.  *See Thomas v. Arn*, 474 U.S. 140, 145 (1985); *United States v. Walters*, 638 F.2d 947, 949-950 (6th Cir. 1981).

When a petitioner objects to a magistrate judge's resolution of a dispositive matter, the district court reviews those objections *de novo*.  Fed. R. Civ. P. 72(b)(3).  Specifically, a district judge:

> must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

*Id*.  "A party who files objections to a magistrate [judge]'s report in order to preserve the right to appeal must be mindful of the purpose of such objections: to provide the district court 'with the opportunity to consider the specific contentions of the parties and to correct any errors immediately.'" *Jones v. Moore*, 2006 WL 903199 at * 7 (N.D. Ohio April 7, 2006) (citing *Walters*, 638 F.2d at 949–50).

When a party fails to raise a specific objection to a finding of a magistrate judge on a dispositive matter, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."  Fed. R. 72(b)(3), Advisory Committee Notes.  *See also Thomas*, 474 U.S. at 150 (stating that "[i]t does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings.")

### III.     Legal Standards regarding AEDPA Petitions

#### A.     Standard of Review for Claims Reviewed on the Merits

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997).  The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Clearly established federal law is to be determined by the holdings (as opposed to the dicta) of the United States Supreme Court.  *See Parker v. Matthews*, 567 U.S. 37 (2012); *Renico v Lett*, 559 U.S. 766 (2010); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Shimel v. Warren*, 838 F.3d 685, 695 (6th Cir. 2016); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005).  Moreover, the Supreme Court has indicated that circuit precedent does not constitute "clearly established Federal law, as determined by the Supreme Court."  *Parker*, 567 U.S. at 48-49; *Howes v. Walker*, 567 U.S. 901 (2012).  *See also Lopez v. Smith*, 574 U.S. 1,  4 (2014) (per curiam) ("Circuit precedent cannot 'refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that this Court has not announced.' " (quoting *Marshall v. Rodgers*, 569 U.S. 58 (2013))).

16

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413.  *See also Carter v. Bogan*, 900 F.3d 754, 767 (6th Cir. 2018).  By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.  See also Shimel,* 838 F.3d at 695.  However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Williams v. Taylor*, 529 U.S. at 411.  Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law.  *Id*. at 410-12. "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006) (citing *Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

In *Harrington v. Richter*, 562 U.S. 86 (2011), the Supreme Court held that as long as "fairminded jurists could disagree on the correctness of the state court's decision," relief is precluded under the AEDPA. *Id.* at 786 (internal quotation marks omitted). The Court admonished that a reviewing court may not "treat[ ] the reasonableness question as a test of its confidence in the result it would reach under *de novo* review," and that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 785. The Court noted that Section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal

17

justice systems" and does not function as a "substitute for ordinary error correction through appeal." *Id.* (internal quotation marks omitted). Therefore, a petitioner "must show that the state court's ruling ... was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 786–87. This is a very high standard, which the Supreme Court readily acknowledged. *Id*. at 786 ("If this standard is difficult to meet, that is because it is meant to be.")

### B.     Procedural Default

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice. *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006). A claim may become procedurally defaulted in two ways. *Id*. First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court. *Id.; see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). If, due to petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted. [4] *Id.*

Second, a petitioner may also procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S.

---

[4] In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted. *Maupin*, 785 F.2d at 135. Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice." *Id.* at 138–39*; Barkley v. Konteh*, 240 F. Supp.2d 708 (N.D. Ohio 2002). "To inform this inquiry, we look to the last explained state court judgment." *Stojetz v. Ishee*, 892 F.3d 175, 191 (6th Cir. 2018) (internal quotation marks and citations omitted).

838, 848 (1999).  If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted.[5]  *See Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991); *Lundgren*, 440 F.3d at 763; *Lovins v. Parker*, 712 F.3d 283, 295 (6th Cir. 2013) ("a claim is procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule.")

Where a petitioner has procedurally defaulted claims, "federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman,* 501 U.S. at 750.  Demonstrating cause requires showing that an "objective factor external to the defense impeded counsel's efforts to comply" with the state procedural rule.  *Murray v. Carrier*, 477 U.S. 478, 488).  *See also Gerth v. Warden, Allen Oakwood Corr. Inst.,* 938 F.3d 821, 830 (6th Cir. 2019).  "Prejudice, for purposes of procedural default analysis, requires a showing that the default of the claim not merely created a possibility of prejudice to the defendant, but that it worked to his actual and substantial disadvantage, infecting his entire trial with errors of constitutional dimensions." *Jamison v. Collins*, 291 F.3d 380, 388 (6th Cir. 2002) (citing *United States v. Frady,* 456 U.S. 152, 170–71(1982)).  *See also Beuke v.  Houk*, 537 F.3d 618, 634 (6th Cir. 2008).  The miscarriage of justice exception requires a prisoner to present new reliable evidence showing that he is actually innocent.  *Schlup v. Delo*, 513 U.S. 298, 321, 324 (1995).

---

[5] This second type of procedural default is often confused with exhaustion. Exhaustion and procedural default, however, are distinct concepts.  AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle,* 456 U.S. at 125 n. 28. Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review. *Id.*

### III.  Analysis

#### A.  Ground One – Ineffective Assistance of Appellate Counsel

As set forth above, in Ground One, Thomas asserts that appellate counsel was ineffective for failing to raise the following claims on direct appeal:  (1) ineffective assistance of trial counsel based on trial counsel's failure to understand and properly investigate the cell phone records used by the State during trial (Sub-claim I.A); (2) ineffective assistance of trial counsel based on trial counsel's failure to cross-examine and request a jury instruction on confirmation bias (Sub-claim I.B); (3) prosecutorial misconduct and/or ineffective assistance of trial counsel based on the withholding of evidence regarding (a) the "true reputation" of the victim and (b) third-party guilt (Sub-claim I.C); (4) Thomas should have been granted a separate trial from his co-defendant (Sub-claim I.D); and (5) ineffective assistance of trial counsel based on trial counsel's failure to object under the Confrontation Clause concerning statements made by the victim to his girlfriend concerning Thomas (Sub-claim I.F.)  (Doc. No.1.)  In this Ground, Thomas also raises a claim of ineffective assistance of appellate counsel based on appellate counsel's failure to inform him of the deadline for filing a post-conviction petition under Ohio Rev. Code § 2953.21 (Sub-claim I.E.)  (*Id.*)  Finally, Thomas raises a claim of cumulative error based on the combined effect of all of the above instances of alleged ineffective assistance of appellate counsel (Sub-claim I.G).  (*Id.*)

In the R&R, Magistrate Judge Baughman recommends that Sub-Claims A, B, C, D, and F be dismissed as procedurally defaulted.  (Doc. No. 29 at pp. 23-31.)  Magistrate Judge Baughman further recommends that Sub-Claims E and G be dismissed as non-cognizable.  (*Id*. at pp. 22-23.)  Thomas raises numerous Objections to the Magistrate Judge's conclusions.  (Doc. No. 32.)  The Court will conduct a *de novo* review of Thomas' Objections, below.

20

### 1.      Sub-claims A, B, C, D

The Magistrate Judge recommends that Sub-claims A, B, C, and D of Ground One be dismissed as procedurally defaulted because they were raised for the first time in Thomas's second 26(B) Application, which was submitted nearly one year after his first 26(b) Application, and denied by the state appellate court on the grounds that Ohio law does not provide for successive or second 26(B) Applications.  (Doc. No. 29 at pp. 23-31.)  Magistrate Judge Baughman further recommends that the Court find that Thomas has failed to show either cause or prejudice to excuse the default. (*Id.*)  Finally, the Magistrate Judge recommends that the Court find that the default of these Sub-claims cannot be excused based on the miscarriage of justice exception because Thomas has not come forward with new evidence of innocence that was not available at the time of trial.  (*Id.* at p. 31.)

Thomas raises the following objections to the Magistrate Judge's analysis of these Sub-claims.  (Doc. No. 32 at pp. 25-28.)  First, Thomas argues that Sub-claims A through D are not defaulted because he "did not have counsel on his first, untimely App. R. 26(B) application" due to the fact that "Mr. Levine abandoned him."  (*Id.* at p. 25.)  He asserts that his first 26(B) Application was, therefore, "a nullity" and it was improper for the state appellate court to deny his second 26(B) Application on the grounds that it was successive.  (*Id.*)

Second, Thomas objects to the Magistrate Judge's finding that he failed to establish cause to excuse the default.  (*Id.* at p. 27.)  In this regard, Thomas argues that he "has been diligent" in pursuing his rights to reopen his appeal.  (*Id.*)  Third, Thomas objects to the Magistrate Judge's finding that he failed to establish prejudice to excuse the default, arguing that "Ohio gave Mr. Thomas no valid method to [raise] ineffectiveness of his appellate counsel, trial counsel, or even his initial collateral

review counsel." (*Id*.)  Finally, Thomas objects to the Magistrate Judge's conclusion that he failed to establish actual innocence.  (*Id*.)

The Court will address each of these Objections, in turn, below.

### a.    Procedural Default

It is undisputed that Sub-claims A through D were raised for the first time in Thomas's second 26(B) Application.  As discussed above, this Application was submitted by Thomas's new counsel, John Parker, in August 2017, over a year after the state appellate court denied Thomas's first, *pro se* 26(B) Application as untimely.  The state appellate court denied Thomas's second 26(B) Application on the grounds that "[t]he Ohio Supreme Court has held that "there is no right to file successive applications for reopening" under Rule 26(B)."  (Doc. No. 7-2 at PageID# 291) (citing *State v. Williams*, 99 Ohio St.3d 179 (2003).)  In addition, the state appellate court noted that "'[o]nce ineffective assistance of counsel has been raised and adjudicated, *res judicata* bars its relitigation.'" (*Id.*) (quoting *State v. Cheren*, 73 Ohio St.3d 137, 138 (1995); *State v. Twyford*, 106 Ohio St.3d 176 (2005).)

As the Magistrate Judge correctly notes, the Sixth Circuit recently found that a habeas petitioner's ineffective assistance of appellate counsel claims were defaulted because they were raised for the first time in a successive 26(B) Application and rejected by the state appellate court on that basis.  *See Smith v. Warden, Toledo Correctional Institution*, 780 Fed. Appx. 208, 223 (6th Cir. 2019). In *Smith*, the petitioner's first 26(B) Application was denied on the merits and petitioner thereafter filed a second 26(B) Application through new counsel raising seven additional instances of ineffective assistance of appellate counsel.  *Smith*, 780 Fed. Appx. at 216.  The state appellate court

denied the second 26(B) Application, and the Ohio Supreme Court declined to accept jurisdiction of

petitioner's appeal.  *Id*.  In finding these claims defaulted, the Sixth Circuit explained as follows:

> First, we ask whether there is "a state procedural rule that is applicable to the
> petitioner's claim and [whether] the petitioner failed to comply with the rule." *Maupin*,
> 785 F.2d at 138.  **Although Smith argues that there is no per se rule barring
> successive Rule 26(B) applications, the Supreme Court of Ohio has held
> otherwise**.  "[T]here is no right to file successive applications for reopening under
> [Rule] 26(B).... Once ineffective assistance of counsel has been raised and
> adjudicated, *res judicata* bars its relitigation." *State v. Twyford*, 106 Ohio St.3d 176,
> 833 N.E.2d 289, 290 (2005) (citation and internal quotation marks omitted); *see also*
> *State v. Richardson*, 74 Ohio St.3d 235, 658 N.E.2d 273, 274 (1996) (holding that
> Rule 26(B) does not "provide[ ] for second and subsequent applications for
> reopening"). **Smith argues that this principle does not apply where a second Rule
> 26(B) application "addresses entirely new instances of IAAC and errors
> committed by a different appellate attorney." But he provides no authority for
> this proposition, and we are aware of none.  Moreover, he has no basis to argue
> that a second Rule 26(B) application is available to address the errors of the
> attorney who represented him on the first Rule 26(B) application.** A Rule 26(B)
> "application for reopening is a 'collateral postconviction remedy,' and the state 'has
> no constitutional obligation to provide counsel to those defendants who file
> applications under that rule.'" *Twyford*, 833 N.E.2d at 290 (quoting *Morgan v. Eads,*
> 104 Ohio St.3d 142, 818 N.E.2d 1157, 1159, 1161 (2004)); *see also Lopez v. Wilson*,
> 426 F.3d 339, 351–52 (6th Cir. 2005) (en banc). Because there is no constitutional
> right to counsel in Rule 26(B) proceedings, there can be no ineffective assistance of
> Rule 26(B) counsel claim.  *See Coleman*, 501 U.S. at 752, 111 S.Ct. 2546.

*Id*. at 223 (emphasis added).   Applying *Maupin, supra,* the court then went on to find that the claims

were defaulted because (1) the state courts actually enforced the state procedural sanction, and (2)

the state procedural forfeiture was an adequate and independent state ground on which the state can

rely to foreclose review of a federal constitutional claim.  *Id.* at 223-224.

Notably, the Sixth Circuit also rejected the petitioner's argument that the ineffectiveness of

his initial 26(B) Application counsel excused the default of the claims in his second 26(B)

Application:

> Smith appears to argue that there is cause and prejudice for the procedural default of
> these claims because counsel for the initial Rule 26(B) application was himself

ineffective. This argument is based on *Martinez v. Ryan*, where the Supreme Court held that the ineffective assistance of counsel or lack of counsel in postconviction proceedings can excuse the failure to raise a claim of ineffective assistance of trial counsel when such a claim must be first raised in postconviction proceedings. 566 U.S. at 17, 132 S.Ct. 1309. Thus, though ineffective assistance of postconviction counsel is not a freestanding claim for federal habeas relief, it can provide cause under certain circumstances for a petitioner to overcome procedural default. *Id.*

Smith's argument for extending *Martinez* is foreclosed by both Sixth Circuit and Supreme Court precedent. Ohio law is clear that Rule 26(B) provides a "collateral postconviction remedy." *Morgan*, 818 N.E.2d at 1159. This court has held, however, that "ineffective assistance of postconviction counsel cannot supply cause for procedural default of a claim of ineffective assistance of appellate counsel." *Hodges v. Colson,* 727 F.3d 517, 531 (6th Cir. 2013). So has the Supreme Court. In *Davila v. Davis*, the Court declined to extend the rule of *Martinez* and *Trevino v. Thaler*, 569 U.S. 413, 133 S.Ct. 1911, 185 L.Ed.2d 1044 (2013), to allow ineffective assistance by state postconviction counsel to provide cause for the default of claims of ineffective assistance of appellate counsel. —— U.S. ——, 137 S.Ct. 2058, 2062–63, 198 L.Ed.2d 603 (2017).  **Thus, even if Smith's first Rule 26(B) counsel was ineffective, this cannot provide cause to excuse the default of the IAAC claims in his second Rule 26(B) application.**

*Id.* at 224-225 (emphasis added).

*Smith* supports the conclusion that Thomas's ineffective assistance of appellate counsel Sub-claims A through D are procedurally defaulted.  As in *Smith,* the first element of *Maupin* is met because, although there is no *per se* rule barring successive 26(B) Applications, the Supreme Court of Ohio has made it clear that there is no right to file successive applications for reopening under Ohio App. R. 26(B).  *See Smith*, 780 Fed. Appx. at 223; *Twyford,* 833 N.E.2d at 290.  Second, the state appellate court actually enforced the state procedural sanction.  Indeed, in its October 2, 2017 decision, the state appellate court expressly denied Thomas's second 26(B) Application on the grounds that "[t]he Ohio Supreme Court has held that "there is no right to file successive applications for reopening" under Rule 26(B)."  (Doc. No. 7-2 at PageID# 291.)  Third, Thomas cites no authority for the proposition that the Ohio Supreme Court's rule barring successive 26(B) Applications is not

24

an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim.  To the contrary, the Sixth Circuit expressly found that this part of the *Maupin* test was met in *Smith, supra*.[6]  Finally, as in *Smith,* Thomas cannot rely on the ineffectiveness of his initial 26(B) Application counsel (i.e., attorney Levine) to establish cause to excuse the default of Sub-Claims A through D.[7]

Thomas, however, argues that *Smith* is distinguishable because, here, Levine failed entirely to file the initial 26(B) Application (despite his promise to do so), effectively abandoning Thomas and causing his initial *pro se* Application to be denied as untimely.  (Doc. No. 32 at p. 26.)  Essentially, Thomas asserts that Levine's abandonment constitutes an independent basis for finding cause to excuse the default of his ineffective assistance of appellate counsel claims.  (*Id*.)

In *Maples v. Thomas,* 565 U.S. 266 (2012), the Supreme Court held that the complete abandonment by counsel during state post-conviction proceedings without notice to the petitioner may establish cause to excuse default.  In that case, Maples had been convicted of murder and sentenced to death in Alabama and secured two attorneys from New York to represent him during

---

[6] Thomas suggests that the state appellate court's denial of his second 26(B) Application denied him his right of access to the courts.  This argument is without merit.  Thomas had the opportunity to challenge the constitutional effectiveness of his trial counsel on direct appeal.  He was also afforded the opportunity to challenge the constitutional effectiveness of his appellate counsel through his Rule 26(B) application.  Moreover, as noted above, Thomas is not constitutionally entitled to effective assistance of 26(B) counsel. *See Wainwright v. Torna*, 455 U.S. 586, 587-88 (1982) ("Since respondent had no constitutional right to counsel, he could not be deprived of the effective assistance of counsel by his retained counsel's failure to file the application timely."); *Carter v. Mitchell*, 693 F.3d 555, 565 (6th Cir. 2012) ("A Rule 26(B) application is a collateral challenge to which petitioners do not have the right to assistance of counsel.").  Thus, Thomas has not demonstrated that the denial of his second 26(B) application deprived him of a mechanism to bring constitutional claims of ineffective assistance of counsel.  *See Taylor v. LaRose*, 2019 WL 2020929 at * 3 (N.D. Ohio May 3, 2019).

[7] Thomas argues that "since App. R. 26(B) is an initial collateral proceeding under *Martinez*, he is entitled to effective assistance of counsel."  (Doc. No. 32 at p. 26.)   As noted above, however, this argument, has been repeatedly rejected by the Sixth Circuit.  *See Smith*, 780 Fed. Appx. at 224-225; *McClain v. Kelly,* 631 Fed. Appx. 422, 433 (6th Cir. 2015).  *See also Taylor,* 2019 WL 2020929 at * 4.

state postconviction proceedings.  *Id.* at 270. The attorneys filed an initial petition for relief on Maples's behalf, but they left their law firm to take jobs elsewhere while the petition was pending. *Id*. at 275.  Their new employment prohibited them from continuing to represent Maples and they accordingly stopped working on his case, but they failed to notify Maples or the court of their departure, and no other attorney assumed representation of Maples in the interim.  *Id*. at 275–76.

When the state trial court later issued an order denying his petition, Maples was never notified, causing him to miss the 42-day window to file a postconviction appeal.  *Id.* at 276–77.  When Maples learned of this much later, he secured new representation, exhausted all possible remaining state-court avenues for relief, and eventually filed a habeas petition in federal court.  *Id.* at 277–78.  The district court nevertheless found that Maples's claims were procedurally defaulted because he had missed the filing deadline to appeal them.  *Id.* at 279.  That court also found that any claim of his postconviction appellate counsels' ineffectiveness could not serve as cause to lift the procedural bar under *Coleman v. Thompson*, 501 U.S. 722 (1991).  *Id.* at 279.  The Eleventh Circuit affirmed.

The Supreme Court reversed, finding a distinction between claims of attorney error on the one hand, and claims of attorney abandonment on the other.  *Id*. at 282.  The court concluded that, while a petitioner is ordinarily bound by postconviction counsel's negligence, "however egregious" it may be, a "markedly different situation" arises "when an attorney abandons his client without notice."  *Id.* at 281–82.  In the former scenario, counsel still acts as the petitioner's agent, just not effectively.  In the latter case, the principal-agent relationship is severed, and "a client [cannot] be faulted for failing to act on his own behalf when he lacks reason to believe his attorneys of record, in fact, are not representing him."  *Id.* at 283.  Thus, when "extraordinary circumstances" exist and an

attorney ceases to operate as a petitioner's agent "in any meaningful sense of that word," the petitioner has been abandoned, and the procedural bar to federal habeas review may be lifted. *Id.*

The Supreme Court found that Maples's situation was indeed "extraordinary." He "lacked the assistance of any authorized attorney" during the 42-day postconviction appeal window. *Id.* at 288–89. The Court found that the conduct of Maples's attorneys went beyond negligence — they had "severed their agency relationship with Maples" when they assumed new employment, which by law "disabled them from continuing to represent Maples." *Id.* at 283–84 (citing Restatement (Second) of Agency § 112 (1957)). Moreover, after their departure, no other attorneys assumed representation of Maples. *Id.* at 286-287. Compounding the problem, Maples had no reason "to suspect that he lacked counsel able and willing to represent him," thereby closing the door on any remaining chance to ensure that his postconviction appellate brief was timely filed. *Id.* at 288–89.

By abandoning their duty of representation, Maples's attorneys caused him to miss the deadline for filing his brief, which resulted in the procedural default of all his claims and ended any hope of having his death sentence overturned. The Court found that Maples had been "disarmed" by these "uncommon facts" and "extraordinary circumstances," and held that his attorneys' abandonment was cause to excuse the default, thereby permitting him to raise claims in federal court that had otherwise been forfeited when he missed the deadline to file a postconviction appeal. *Id.* at 280.

In *Young v. Westbrooks*, 702 Fed. Appx. 255 (6th Cir. 2017), the Sixth Circuit considered the issue of what attorney conduct is sufficient to constitute "abandonment" under *Maples.* In that case, Young was convicted of second-degree murder and aggravated assault. *Id.* at 256. After his convictions and sentence were affirmed on direct appeal, Young, through counsel, filed a post-

conviction petition that raised approximately twenty grounds for relief, including sixteen claims of ineffective assistance of trial and appellate counsel. *Id*. at 257. The state trial court denied the petition, and Young was appointed new counsel for appeal. On appeal, his new lawyer, Hershell Koger, raised only four ineffective assistance of counsel claims, in a brief that was filed two days late but ultimately accepted and considered by the state trial court. *Id*. at 258. The state appellate court denied Young's appeal on the merits. *Id*.

Young then filed a federal habeas petition, in which he raised twenty-five claims for relief, including eight that were raised during his initial state postconviction proceedings and denied on the merits but not re-raised by Koger on appeal. *Id*. Young acknowledged these claims were procedurally defaulted but argued there was cause to excuse the default because Koger had abandoned him on appeal. *Id*. In support of this argument, Young claimed that Koger had failed to communicate with him, missed deadlines, and failed to timely file his postconviction appellate brief. *Id*. The district court rejected Young's arguments, finding that Young was unable to establish cause under Maples because Koger had not effectively abandoned him. *Id*.

The Sixth Circuit agreed, explaining, in relevant part, as follows:

According to Young, his postconviction appellate counsel "did absolutely nothing of value during his 'representation'" and this amounted to "effective abandonment." Appellant Br. at 11, 13. He highlights three problems with Koger's representation that he says evince abandonment: first, that counsel missed filing deadlines and ultimately filed a late brief with the court; second, that counsel failed to raise "the best and most obvious issues" in his appeal; and third, that counsel never communicated with him during the course of his representation. While each of Young's allegations of counsel's failings cause us to question counsel's "effectiveness," they do not—separately or when considered together—constitute "abandonment."

Young's first two allegations—that Koger missed filing deadlines and did not raise the most meritorious issues—offer little support for abandonment. **First, the fact that Koger missed multiple deadlines to file Koger's brief may indicate Koger was negligent, and thus ineffective, but does not show that he quit on Young's case**.

28

> *Maples*, 565 U.S. at 281, 132 S.Ct. 912 (reaffirming the general rule that "when a petitioner's postconviction attorney misses a filing deadline [due to attorney negligence], the petitioner is bound by the oversight and cannot rely on it to establish cause"); *see also Ryder v. Sec'y Dep't of Corrs.*, 521 Fed. Appx. 817, 820 (11th Cir. 2013). **Koger's requests for extensions and his motion asking the court to consider his late brief show that he continued to act on Young's behalf—albeit in a negligent manner**. *See* R. 71-3, Motions for Extension at 2, 4 PID 2760, 2762 (explaining that preparing for impending jury trials and hearings in other cases and attending to personal matters, "[i]n addition to working on [Young's brief]," prevented timely filing); R. 71-3, Motion to Late File at 7, PID 2765 (admitting he had mistakenly believed Young's brief was due later than the actual due date and citing "counsel error and oversight").

*Id*. at 261-262 (emphasis added). In this regard, the court found that Koger's actions were distinguishable from those of the attorneys in *Maples* because "[t]here, Maples's attorneys never requested any time extensions, failed to file a notice of appeal altogether, and never filed any brief on his behalf—all of the evidence showed that they had ceased their representation and had abandoned his case." *Id*. at 262.

The court also rejected Young's argument that Koger abandoned him by failing to raise the "best issues of obtaining relief." *Id*. The court explained that "this argument is a nonstarter since *claim* abandonment – while perhaps ineffective assistance—is not the same as *client* abandonment." *Id*. In this regard, the court found there was no client abandonment, in part, because "Koger continued to function as Young's attorney by filing a 17-page brief and raising four claims for relief on his behalf." *Id*. Finally, although a closer call, the court rejected Young's argument that Koger's failure to communicate with him amounted to abandonment for purposes of *Maples*. *Id*. at 262-264.

The Sixth Circuit concluded by noting that "[w]hile we do not condone counsel's behavior, we are also not at liberty to provide relief when the law simply does not provide for it." *Id*. at 265. It explained that "[t]o our knowledge, no other court of appeals has held that a lawyer abandons his

client despite filing a brief on his behalf and we will not be the first to extend *Maples* in this fashion." *Id.*

Applying *Maples* and *Young* to the facts of the instant case, the Court cannot find that Levine abandoned Thomas for purposes of establishing cause to excuse the default of his ineffective assistance of counsel claims.  Although Levine's behavior was negligent, he did not effectively abandon Thomas in the same manner as Maples' lawyers abandoned him.  It is true that Levine promised to timely file Thomas's initial 26(B) Application and failed to do so, causing Thomas to file a *pro se* Application that was rejected as being one day late.  However, the record reflects that, before the state appellate court denied Thomas's *pro se* 26(B) Application, Levine filed a Reply Brief on Thomas's behalf in response to the State's Motion to Dismiss, in which Levine argued there was good cause to accept the late filing.  (Doc. No. 7-2 at PageID# 205.)  In addition, after the state trial court denied Thomas's initial 26(B) Application, Levine filed a Motion for Reconsideration, in which he again urged the court to find good cause.[8]  (*Id.* at PageID# 211-217.)  In an Affidavit attached to the Motion, Levine averred (in relevant part) as follows:

9.   I received a *pro se* Appellate Rule 26(B) from Appellant with a request to review same and to file in this Court.

10.  I was diligent in reviewing current case law, including cases decided in this Appellate District, as well as pending and decided in the Ohio Supreme Court.

11.  I hold a strong professional opinion that the proposed Assignments of Error set forth in the *pro se* Appellate Rule 26(B) Application to reopen the appeal [] have substantial merit and should be reviewed on the merits.

---

[8] The Court notes that the copy of the Motion for Reconsideration included in the state court record is unsigned and does not include a date stamp of filing.  However, the state court docket sheet reflects that Levine did, in fact, file the Motion for Reconsideration on April 8, 2016.  *See* Docket Sheet for *State v. Thomas*, Case No. CA-24705 (Ninth Appellate District).

30

12.    I believe that said proposed Assignments of Error allege Constitutional violations that materially and adversely affected the Appellant.

13.    I, in good faith, believed that the Application was filed timely; however, Affiant concedes that a[] computational error resulted in filing on the ninety-first (91st) day.

14.    I believe good cause exists for this Court to grant the Application where the Constitutional rights of Gracshawn Thomas have been violated.

15.    I implore this Honorable Court to find that Appellant's right to Due Process of Law and the effective assistance of counsel should mitigate in favor of finding good cause and accept the Application to reopen and militate the appeal.

(*Id.* at PageID# 216-217.)

As in *Young*, the fact that Levine missed a filing deadline may indicate that he was negligent, but it does not show that "he quit on [Thomas's] case." *Young*, 702 Fed. Appx. at 262.  Likewise, the instant case is distinguishable from *Maples,* in which petitioner's attorneys failed to file anything on his behalf and, literally, were not serving as his counsel during the relevant time period. *Maples*, 565 U.S. at 276-277.  Indeed, as noted above, Levine entered an appearance on Thomas's behalf and responded to the State's Motion to Dismiss, *before* the state appellate court denied Thomas initial 26(B) Application.  As the Sixth Circuit noted, "no other court of appeals has held that a lawyer abandons his client despite filing a brief on his behalf, and we will not be the first to extend *Maples* in this fashion." *Young*, 702 Fed. Appx. at 265.  The same holds true here.  Accordingly, the Court finds that Thomas has failed to establish that Levine abandoned him, for purposes of establishing cause to excuse the default of his ineffective assistance of counsel claims.

That being said, the Court recognizes that, in *Young*, the state appellate court accepted Koger's untimely brief and considered the issues raised therein on the merits, prompting the Sixth Circuit to note that Young was not prejudiced by Koger's tardy filing. *Young*, 702 Fed. Appx. at 266.  Here,

31

by contrast, the state appellate court denied Thomas's initial Application as untimely and refused to consider it, despite Levine's efforts to persuade the state appellate court to find good cause for the untimely filing.  The Court is not convinced, however, that the fact that Thomas was prejudiced by Levine's untimely filing is sufficient, standing alone, to demonstrate "abandonment" for purposes of *Maples*.  In *Maples,* the basis of the Supreme Court's finding that the "extraordinary circumstances" of abandonment were met, was the fact that Maples's attorneys literally ceased to represent him during the crucial post-conviction appeal window and, further, failed to give him any notice of the fact that he was effectively unrepresented.  Here, Levine's conduct may have prejudiced Thomas, but he did not entirely abandon him.   Indeed, the record reflects that he filed at least two briefs in support of Thomas's initial *pro se* 26(B) Application.  Based on these facts, it cannot be said that Levine was "not operating as [Thomas's] agent in *any* meaningful sense of that word."  *Maples*, 565 U.S. at 282 (emphasis added).  Accordingly, the Court rejects Thomas's argument that Levine abandoned him under *Maples.  See also Stojetz v. Ishee*, 892 F.3d 175, 206-207 (6th Cir. 2018) (finding post-conviction counsel did not abandon petitioner under *Maples* despite the fact that counsel failed to file a brief in those proceedings and his failure to do so resulted in the dismissal of the petitioner's appeal with prejudice.)

However, even assuming *arguendo* that Levine's conduct did constitute "abandonment" under *Maples*, this would arguably only serve as cause to excuse the default of the ineffective assistance of appellate counsel claims raised by Thomas in his initial *pro se* 26(B) Application, as well as the claims raised in Levine's October 2015 Reply Brief[9] (Doc. No. 7-2 at PageID# 203-207)

---

[9] As noted *supra*, the Reply Brief filed by Levine raised the following claims:  (1) "Appellant's counsel failed to raise a specific assignment of error relating to ineffective assistance of trial counsel in failing to object to the admission of

and April 2016 Motion to Reconsider[10] (Doc. No. 7-2 at PageID# 211-215.)  As the Magistrate Judge correctly notes, only one of the claims raised in these filings (i.e., Sub-claim F of Ground One) corresponds to a Ground for Relief in Thomas's federal habeas petition.  Thus, even if the Court found abandonment under the facts presented, it would not serve as cause to excuse the default of Sub-claims A through D of Ground One of the instant Petition because those claims were not raised in either Thomas initial 26(B) Application, Levine's October 2015 Reply Brief, or Levine's April 2016 Motion to Reconsider.[11]

Accordingly, the Court finds that Sub-claims A through D of Ground One are procedurally defaulted and, further, that Thomas has failed to establish cause to excuse the default.[12]

### b.    Actual Innocence

The Magistrate Judge also concluded that Thomas could not show actual innocence to excuse the procedural default of Sub-claims A through D because the evidence of innocence identified by Thomas was available at the time of trial.  (Doc. No. 29 at p. 31.)  Thomas strenuously objects to this finding.  (Doc. No. 32 at pp. 12-16.)

---

inadmissible hearsay statements;" and (2) "Appellant's counsel failed to argue Plain Error in the direct appeal as to violations of the Constitution's Confrontation Clause." (Doc. No. 7-2 at PageID# 205.)

[10] The Motion for Reconsideration filed by Levine raised the following claims of ineffective assistance of appellate counsel:  (1) failure to argue plain error where trial counsel failed to object to Ms. White's testimony on the basis of the Confrontation Clause; (2) improper jury instructions regarding circumstantial evidence; and (3) failure to raise plain error where trial counsel failed to object to prosecutorial misconduct.  (Doc. No. 7-2 at PageID# 214.)

[11] For all the reasons discussed *supra*, the Court rejects Thomas's argument that, because Levine abandoned him, the initial, *pro se* 26(B) Application was a legal "nullity."  Thomas cites no authority in support of the proposition that abandonment would nullify this filing and somehow resuscitate the claims set forth in the second 26(B) Application.

[12] In the absence of cause, a court need not reach the issue of prejudice. *See Simpson v. Jones*, 238 F.3d 399, 409 (6th Cir. 2000); *Sandridge v. Buchanan*, 2017 WL 2255378 at * 11 (N.D. Ohio April 27, 2017).

Because the cause and prejudice standard is not a perfect safeguard against fundamental miscarriages of justice, the United States Supreme Court has recognized a narrow exception to the cause requirement where a constitutional violation has "probably resulted" in the conviction of one who is "actually innocent" of the substantive offense. *Dretke v. Haley*, 541 U.S. 386 (2004). *See also Schlup v. Delo,* 513 U.S. 298, 327 (1995). This type of actual innocence claim, sometimes called gateway innocence, "does not by itself provide a basis for relief." *Schlup*, 513 U.S. at 315. In other words, the innocence showing is "not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Id*. (quoting *Herrera v. Collins*, 506 U.S. 390, 404 (1993)). Thus, a petitioner's showing of a credible claim of innocence allows him to skirt a procedural defect in his claim so that a federal court may address his allegation of constitutional error. *Davis v. Bradshaw*, 900 F.3d 315, 326 (6th Cir. 2018).

"But this innocence gateway is a narrow one." *Davis*, 900 F.3d at 326. The Supreme Court has cautioned that it "should open only when a petition presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of non-harmless constitutional error." *McQuiggin v. Perkins*, 569 U.S. 383, 401 (2013) (citation and internal quotation marks omitted). Thus, the exception "applies to a severely confined category: cases in which new evidence shows it is more likely than not that no reasonable juror would have convicted [the petitioner]." *Id*. at 395 (alteration in original) (citation and internal quotation marks omitted); *see Souter v. Jones*, 395 F.3d 577, 590 (6th Cir. 2005).

Because a gateway-innocence claim "involves evidence the trial jury did not have before it, the inquiry requires the federal court to assess how reasonable jurors would react to the overall, newly

supplemented record." *House v. Bell*, 547 U.S. 518, 538 (2006).  In doing so, a habeas court "must consider all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial." *Id.* (citations and internal quotation marks omitted).  The court must also "consider how the timing of the submission and the likely credibility of the affiants bear on the probable reliability of [new] evidence." *Id.* at 537 (citations and internal quotation marks omitted).

For a petitioner to establish entitlement to the actual innocence exception, he must support his allegations of constitutional error with new, reliable evidence, such as exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence, that was not presented at trial. *Id.  See also Davis,* 900 F.3d at 326; *Gulertekin v. Tinnelman–Cooper*, 340 F.3d 415, 427 (6th Cir. 2003).  Absent new evidence of innocence, "even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim." *Schlup*, 513 U.S. at 316.

Thomas argues that the Magistrate Judge erred in failing to consider evidence that was "available but not presented at trial of third-party guilt."  (Doc. No. 32 at p. 14.)  Specifically, Thomas asserts that the following demonstrates actual innocence sufficient to constitute cause to excuse the default of his ineffective assistance of counsel claims:

> The evidence of third-party guilt is contained in police reports not used at trial either by the State or the defense. In short, other identified people (according to the victim in this case) had shot at him previously, wanted him dead and he was fearful for his life. In fact, the victim in this case had gone to the Akron police with his concerns that his life was in danger and others had tried to kill him.
>
> The police reports also reflect that at the time of the victim's death, the victim was charged with shooting at two people in a car even though he maintained and told the police he was the victim in that case when he was actually the one shot at by the two people. In none of these reports is Thomas named as a suspect. Doc.#7-2 Page ID 268-

35

269, 272 (police reports charging victim in this case with shooting at two named people in car)

Additional evidence of third party guilt that was not presented to the trial court/jury included statements/testimony by the victim's brother (named Demarcus whose car the victim was killed in; See Doc. #7-2 Page ID 279-280) had been previously shot at (Doc.# 7-2 Page ID 273, 276-77) when Demarcus was driving and that Demarcus had reason to believe the co-defendant in Thomas's trial (Rico) was the actual killer and not Thomas.  (Doc.#7-2 Page ID 275-81)

The victim expressed concern for his life to the police and told them he had been followed by numerous black males in SUVs, he was worried for life and "Shit is real." Doc. #7-2 PageID 271-274.

(*Id*. at p. 15.)  Although the above evidence was not presented to the jury at trial, Thomas maintains that the Sixth Circuit has suggested that actual innocence may be shown by relying on newly presented (not just newly discovered) evidence of innocence.  (*Id.* at p. 15-16.)  Thus, he asserts that the Magistrate Judge improperly failed to analyze the above evidence to determine whether it satisfies the actual innocence exception.  (*Id.*)

As noted above, the Supreme Court has explained that a gateway claim of actual innocence requires "new reliable evidence ... that was not presented at trial."  *Schlup*, 513 U.S. at 324.  The Sixth Circuit has recognized, however, that "[t]here is a circuit split about whether the 'new' evidence required under *Schlup* includes only newly discovered evidence that was not available at the time of trial, or broadly encompasses all evidence that was not presented to the fact-finder during trial, i.e., newly presented evidence." *Cleveland v. Bradshaw*, 693 F.3d 626, 633 (6th Cir. 2012); *see Connolly v. Howes*, 304 Fed. Appx. 412, 418 (6th Cir. 2008).  The Sixth Circuit has not directly decided the issue but has suggested that "'newly presented' evidence [is] sufficient." *Cleveland,* 693 F.3d at 633 (citing *Souter*, 395 F.3d at 595 n.9).  *See also Everson v. Larose*, 2020 WL 4920196 at * 3 (6th Cir. May 4, 2020).

Under that standard, the police reports identified by Thomas in his Objections could qualify as "new" evidence, despite the fact that they were not presented at trial.  However, even assuming *arguendo* that these police reports constitute "new" evidence, such evidence must also be "reliable."[13] *See Schlup,* 513 U.S. at 315; *Davis*, 900 F.3d at 326-327.  Assuming the evidence was both new and reliable, such evidence would warrant excusing the procedural default of Thomas's claims only if it makes it "more likely than not that no reasonable juror would have found [Thomas] guilty beyond a reasonable doubt." *Souter*, 395 F.3d at 596 (quoting *Schlup*, 513 U.S. at 327).  *See also Everson*, 2020 WL 4920196 at * 4.

Here, Thomas points to three police reports as evidence of his actual innocence, each of which are attached to his second 26(B) Application.  (Doc. No. 7-2 at PageID#s 268-281.)  The first is an Akron Police Department Incident Report dated April 3, 2013, over five months prior to the September 18, 2013 shooting of Alphonzo Golden (hereinafter referred to as "Golden" or "Alphonzo") for which Thomas was convicted and sentenced.  (Doc. No. 7-2 at PageID# 268-269.)

---

[13] The Sixth Circuit recently discussed examples of what federal habeas courts have found  constitutes "reliable" evidence, as follows: "For example, in the one Supreme Court case in which the petitioner satisfied the gateway-innocence standard, the Court held that 'the central forensic proof connecting [the petitioner] to the crime—the blood and the semen—ha[d] been called into question and [he] ha[d] put forward substantial evidence pointing to a different suspect.' *Id.* at 554, 126 S.Ct. 2064. Although it was 'not a case of conclusive exoneration,' and some evidence still 'support[ed] an inference of guilt,' the Court held that it was 'more likely than not that no reasonable juror viewing the record as a whole would lack reasonable doubt.' *Id.* Similarly, in *Souter,* this court held that the petitioner established gateway innocence where he presented compelling scientific evidence that the 'only evidence which directly tie[d]' him to the victim's death, could not have caused the victim's injuries. *Souter,* 395 F.3d at 590.  In contrast, we have refused to open the innocence gateway when the petitioner's proffered evidence was less reliable. For example, in *Whalen v. Randle,* we held that the petitioner was 'unable to demonstrate that he was actually innocent' even though his evidence included testimony by his alleged codefendant that the petitioner was not an accomplice in the robberies because of 'the doubtful credibility of petitioner's accomplice.' 37 F. App'x 113, 116, 121 (6th Cir. 2002). Similarly, *in Knickerbocker v. Wolfenbarger*, where the petitioner presented an inmate's affidavit stating that the petitioner's codefendant had told the affiant that the petitioner did not strangle the murder victim, we held that this was insufficient to demonstrate the petitioner's actual innocence, in part, because the statements were hearsay, and 'thus presumptively less reliable than direct testimony.' 212 F. App'x 426, 433 (6th Cir. 2007)." *Davis*, 900 F.3d at 326-327.

In that report, Golden is described as being suspected of shooting at two individuals, James Fields and Myteeyah Sherman. (*Id*.)

The second police report is an Akron Police Department Report of Investigation dated October 29, 2013, which contains the statement of the victim's brother, Demarcus Golden (hereinafter referred to as "Demarcus"). (Doc. No. 7-2 at PageID# 275-281.) Therein, Demarcus states that "someone was shooting at Fonzo [i.e., Alphonzo Golden] when he got arrested last spring." (*Id*. at PageID# 279.) Demarcus explains that, on the night that Alphonzo was shot and killed, he was driving Demarcus's car. (*Id*. at PageID# 280.) Demarcus then lists a number of individuals who he believes "want[ed] Fonzo dead," including "Rico" (i.e., Delrico Thomas, who was Thomas's co-defendant at trial); "Lil Dude" (i.e. Duetta Nurse); "B-Loc;" "Lil Man;" and the "east side dudes." (*Id.* at PageID# 275-281.) Demarcus further explains that "his brother's shooting wasn't random; he knows for a fact it was a hit." (*Id.* at PageID# 280.) Lastly, Demarcus states that Alphonzo was "worried about people following him" and "trying to get him." (*Id.* at PageID# 279, 281.)

The third, and final, police report is an Akron Police Department Report of Investigation dated December 12, 2013, which contains the statement of Akron Police Detective Bertina King. (Doc. No. 7-2 at PageID#s 270-274.) Detective King "became associated with the Goldens and the Thomas's from working as security at the bars as APD security." (*Id*.) Detective King states that Alphonzo told her that he first started worrying about getting killed in 2011, after the murder of an individual named Garrick Feaster. (*Id.*) She states that Alphonzo indicated his fears intensified in 2013, after the murder of Reggie Woodall. (*Id.*) Mr. Woodall is the cousin of Petitioner Thomas, herein. (Doc. No. 23-3 at Tr. 268-270, 277; Doc. No. 23-7 at Tr. 845.) Alphonzo told Detective King that "he was worried because he thought he was going to be the next one to get killed." (Doc. No. 7-

38

2 at PageID#s 270-274.) Specifically, he indicated that "the guys from east side related to Reggie had sent threats to him." (*Id.*) Alphonzo also told Detective King that, during the incident in April 2013, people were shooting at *him* and not the other way around. (*Id.*) Alphonzo advised Detective King that he was "afraid for his life." (*Id.*)

For the following reasons, the Court finds that the above evidence is not sufficient to satisfy the gateway actual innocence standard. As an initial matter, evidence that Alphonzo feared for his safety after the murder of Thomas's cousin, Reggie Woodhall, was introduced at trial. (Doc. No. 23-3 at Tr. 270-271, 275.) Thus, to the extent Demarcus's and Detective King's statements indicate that Alphonzo was afraid for his life after the death of Mr. Woodall, they are cumulative of evidence presented to the jury at trial and insufficient to show actual innocence. *See, e.g., Souter*, 395 F.3d at 595; *Allen v. Harry*, 497 Fed. Appx. 473, 480 (6th Cir. 2012); *Stein v. Eberlin*, 2009 WL 650363 at * 4 (N.D. Ohio March 10, 2009) ("The evidence Petitioner portrays as new is merely cumulative of evidence presented at trial and is insufficient to meet the actual innocence standard.")

Moreover, while the above police reports suggest that numerous people may have wanted to harm Alphonzo, they do not contain any evidence indicating that Thomas was not the person that shot Alphonzo on September 18, 2013. For example, none of the police reports contain evidence providing an alibi for Thomas on the night in question. Nor do the police reports contain any statements from witnesses to the September 2013 shooting that identify someone other than Thomas as the shooter. To the contrary, neither Demarcus or Detective King witnessed Alphonzo's shooting or otherwise profess to have any first-hand knowledge of who killed him. Demarcus's speculations as to other people who may have wanted to harm Alphonzo are just that — speculations. Moreover, Detective King simply reports Alphonzo's general and vague statements that the "the east side guys"

39

were out to get him.  These sorts of vague statements are insufficient to establish actual innocence. *See e.g., Allen*, 497 Fed. Appx. at 480 (stating that "the affidavits are devoid of detail … , and as such, lack the necessary 'probative force' to establish that they represent new, trustworthy eyewitness accounts that may serve to buttress his claim").

The Court finds that this evidence is simply not enough to satisfy the demanding actual innocence exception. As discussed at greater length in connection with Thomas's sufficiency of the evidence claim, although Thomas's conviction was based on circumstantial evidence, the fact remains that the State presented evidence that he had a potential motive for shooting Alphonzo; was in the vicinity of the shooting at the time Alphonzo was shot; and was driving an identical vehicle and wearing a shirt that was a similar color to the one worn by the shooter.  Moreover, immediately after the shooting, Thomas thoroughly cleaned the vehicle he had been driving.  One day after charges were issued against Thomas, that same vehicle was painted black and set on fire.  Thomas has not demonstrated that the three police reports noted above present such strong evidence of innocence that "it is more likely than not that no reasonable juror would have convicted [him.]" *McQuiggin*, 569 U.S. at 401; *Souter*, 395 F.3d at 590.

Accordingly, the Court finds that Thomas has failed to satisfy the actual innocence exception so as to excuse the default of Sub-claims A through D of Ground One.  Sub-claims A through D are, therefore, dismissed as procedurally defaulted.

### 2.  Sub-Claim F

In Sub-Claim F of Ground One, Thomas argues that appellate counsel was ineffective for failing to raise a claim of ineffective assistance of trial counsel based on trial counsel's failure to object under the Confrontation Clause to testimony regarding statements made by Alphonzo Golden

40

to his girlfriend concerning Thomas.  (Doc. No. 1.)  Thomas fails to specifically identify the testimony or statements that are the subject of this Sub-Claim, either in the Petition or the Traverse.  (Doc. No. 1 at p. 11, Doc. No. 28 at pp. 28-29.)

As noted *supra,* the Magistrate Judge interpreted this claim as asserting the same ineffective assistance of counsel claim raised in Thomas's initial, *pro se* 26(B) Application regarding trial counsel's failure to object on the basis of the Confrontation Clause. [14]  Specifically, the Magistrate Judge interpreted this claim as relating to testimony by Marcedes White, the mother of some of Alphonzo's children, that Alphonzo was scared of meeting Thomas's cousin, Delrico Thomas.  (Doc. No. 29 at p. 31-32.)  Delrico was also Thomas's co-defendant in the underlying state court criminal case regarding Alphonzo's murder. [15]  According to the Magistrate Judge, the gravamen of Thomas's argument is that this testimony implied that Alphonzo was also scared of Petitioner, because Petitioner and Delrico were close.  (*Id.*)

The Magistrate Judge found that this sub-claim was procedurally defaulted but assumed *arguendo* that Thomas had established cause for the default in light of Levine's alleged0 "abandonment."  (Doc. No. 29 at p. 32.)  The Magistrate Judge went on to find, however, that Thomas could not establish prejudice because Ms. White's statements were non-testimonial in nature for purposes of the Confrontation Clause because they related only to the victim's state of mind.  (*Id.*)

---

[14] In his initial, *pro se* 26(B) Application, Thomas raised a claim of ineffective assistance of counsel claim based on the Confrontation Clause relating to statements by Marcedes White that Alphonzo (1) told Ms. White he was driving around in a truck because he thought he was going to be shot and wanted to be up higher where he could see everything (Tr. 208); (2) told Ms. White he had started carrying a gun out of fear for his safety (Tr. 208); (3) asked Ms. White for information regarding Delrico Thomas (Tr. 271); and (4) told Ms. White that he feared for his life since Woodall (victim) was killed (Tr. 270-271).  As discussed at length above, Thomas's initial 26(B) Application was denied as untimely.

[15] *See State v. Delrico Thomas*, 2015 WL 3765585 (Ohio App. 9th Dist. June 17, 2015).

41

The Magistrate Judge stated that "the Confrontation Clause is only implicated by testimonial statements, while non-testimonial statements are subject to the normal rules pertaining to hearsay." (*Id.* at p. 34.) He then concluded that objecting on the basis of the Confrontation Clause would have been futile and "it is axiomatic that trial counsel is not ineffective for failing to raise a futile or meritless argument, motion or objection, and appellate counsel is not ineffective for failing to assert such claims." (*Id.*) (citing *Holbrook v. Burt*, 2020 WL 955916 at * 17 (E. D. Mich. Feb. 27, 2020)). Accordingly, having failed to find prejudice, the Magistrate Judge recommends that the Court dismissed Sub-Claim F as procedurally defaulted. (*Id.*)

Thomas does not raise any specific Objection to the Magistrate Judge's conclusions that he failed to establish prejudice to excuse the default of this sub-claim. Notably, Thomas does not object to, or even acknowledge, the Magistrate Judge's conclusion that Ms. White's statements are non-testimonial and, therefore, do not implicate the Confrontation Clause. Nor does Thomas address or attempt to distinguish the authority relied on by the Magistrate Judge for this conclusion.

The Court has reviewed the Magistrate Judge's recommendation as to Sub-claim F and finds no clear error. *See, e.g., Doan v. Carter,* 548 F.3d 449, 458 (6th Cir.2008) (victim's statements to family and friends regarding abuse she had received at hands of petitioner not testimonial)*; Kowalak v. Scutt,* 712 F.Supp.2d 657, 686 (E.D. Mich. 2020) (holding that "it is clear that the victim's hearsay statement to Moore regarding the threat that petitioner had made was not testimonial hearsay under *Crawford.*"); *Holbrook*, 2020 WL 955916 at * 17 (finding a statement made by the victim to his girlfriend that he was meeting the petitioner on the night of the shooting was non-testimonial and, therefore, "its admission did not implicate, nor violate, Petitioner's confrontation rights or otherwise

render his trial fundamentally unfair.")  Accordingly, and in the absence of any specific Objection, Sub-claim F of Ground One is dismissed as procedurally defaulted.

### 3.    Sub-Claim E

In Sub-Claim E of Ground One, Thomas argues that appellate counsel was ineffective for failing to inform him of the deadline for filing a post-conviction petition under Ohio Rev. Code § 2953.21.  (Doc. No. 1.)  The Magistrate Judge found that this sub-claim should be denied as non-cognizable because it does not present a stand-alone claim for habeas relief.  (Doc. No. 29 at p. 23.) Thomas does not raise any specific Objections to this recommendation.[16]

The Court has reviewed the Magistrate Judge's recommendation as to Sub-claim E and finds no clear error.  *See, e.g., Andrews v. Warden, Lebanon Corr. Inst*., 2014 WL 10435020 at * 12-13 (S.D. Ohio Oct. 27, 2014) ("Neither the Supreme Court nor the Sixth Circuit has gone so far as to hold that appellate counsel's ineffectiveness in failing to perform a duty pertaining to . . . a state collateral review proceeding amounts to a constitutional violation that may be remedied by this Court other than to the extent that the constitutionally deficient performance may serve to excuse the petitioner's procedural default of other separate underlying grounds for relief."), *report and*

---

[16] The Court notes that Thomas was represented by counsel during these habeas proceedings.  The Court further notes that, rather than raising a specific Objection regarding the Magistrate Judge's analysis of this sub-claim, Thomas simply inserts, verbatim, the entire section of his Traverse that addresses Ground One.  (Doc. No. 32 at pp. 28-41.)  This is not sufficient to raise a specific objection to the Magistrate Judge's analysis of Sub-claim E.  *See Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505, 509 (6th Cir. 1991) (finding that a general objection that does not "address specific concerns with the magistrate's report" will not suffice); *Andres v. Comm'r of Soc. Sec*., 733 Fed. Appx 241, 244 (6th Cir. 2018) ("Because Andres failed to pinpoint the magistrate judge's alleged errors, he has forfeited his arguments on appeal."); *King v. Caruso*, 542 F. Supp. 2d 703, 706 (E.D. Mich. 2008) ("[I]f the 'objection' merely states a disagreement with the magistrate's suggested resolution or summarizes what was brought before the magistrate, it is not an objection for the purposes of this review."); *Woods v. Comm'r of Soc. Sec*., 2019 WL 4017044 at * 1 (N.D. Ohio Aug. 26, 2019) ("Because Woods 'simply objected to the report and recommendation and referred to [one] issue[ ] in the case' rather than 'specifically [ ] address the findings of the magistrate,' her general objection" is not sufficient).

*recommendation adopted by*, 2015 WL 5582241 (S.D. Ohio Sept. 23, 2014).  Accordingly, and in the absence of any specific Objection, Sub-Claim E is dismissed as non-cognizable.[17]

### 4.     Sub-claim G

In Sub-claim G of Ground One, Thomas asserts that "the cumulative errors in this case detailed in A – F above denied Thomas a fair trial and Due Process under the Fourteenth Amendment of the federal Constitution and Art. I Sec. 10 of the Ohio Constitution."  (Doc. No. 1.)  This claim was raised for the first time in Thomas's second 26(B) Application, which was denied by the state appellate court on the grounds that it was successive.

The Magistrate Judge found that "cumulative error – sub-claim G – is not cognizable in federal habeas proceedings."  (Doc. No. 29 at p. 22.)  Thomas does not raise any specific Objection to the Magistrate Judge's analysis or conclusion.

The Court has reviewed the recommendation of the Magistrate Judge as to Sub-claim G and finds no clear error. *See Webster v. Horton*, 795 Fed. Appx 322, 327-28 (6th Cir. 2019) ("Webster argued that the trial court's cumulative errors entitled him to habeas relief.  As stated by the district court, such claims of cumulated trial errors are not cognizable under § 2254.").  Accordingly, and in the absence of any specific Objection, Sub-claim G of Ground One is dismissed as non-cognizable.[18]

### B.     Ground Two -- Confrontation Clause

---

[17] The Court also notes that, even if this claim were cognizable, it was raised for the first time in Thomas's second *pro se* 26(B) Application and, therefore, is procedurally defaulted for the same reasons set forth *supra* in connection with Sub-claims A through D.

[18] As with Sub-claim E, even assuming *arguendo* that Thomas's cumulative error claim is cognizable with respect to the cumulative effect of multiple instances of alleged ineffective assistance of counsel, Sub-claim G is procedurally defaulted because it was raised for the first time in Thomas's second 26(B) Application and is, therefore, subject to dismissal as defaulted for all the reasons set forth in connection with Sub-claims A through D of the Ground One.

In Ground Two, Thomas asserts that the trial court violated his rights under the Confrontation Clause when it allowed the victim's girlfriend, Ms. White, to testify regarding statements made to her by Alphonzo Golden that he was "scared of meeting the co-defendant/cousin of Thomas; " i.e., Delrico Thomas. (Doc. No. 1.) In his Petition and Traverse, Thomas argues (summarily and without citation to any authority) that "[t]he implication of this testimony is that the victim was also scared of Thomas since Thomas and his co-defendant/cousin [Delrico Thomas] were close to each other, were allegedly communicating by cell phone around the time of the Aggravated Murder and the State's theory of the case involved the co-defendant helping Thomas clean out the SUV in question including getting rid of the spent shell casings which were never found inside the van, the surrounding yard where the van was parked after the crime scene, or at the crime scene." (Doc. No. 1 at p. 12; Doc. No. 28 at p. 31.)

The Magistrate Judge interpreted this Ground as raising the same Confrontation Clause claim raised by Thomas on direct appeal to the state appellate court. (Doc. No. 29 at p. 35.) The record reflects that Thomas raised a direct Confrontation Clause claim on direct appeal to the state appellate court, based on statements by Ms. White that (1) Alphonzo asked her for information about Thomas and Delrico before his death; (2) she provided Alphonzo with Delrico's phone number, and (3) Alphonzo seemed afraid of meeting Delrico. *See State v. Thomas*, 2015 WL 3765579 at * 2 (Ohio App. 9th Dist. June 17, 2015) The state appellate court rejected this claim as follows:

> Regarding Thomas's confrontation clause argument, we note that he did not make such an argument in the trial court. He, therefore, forfeited it for appeal. *State v. Maple*, 9th Dist. Summit No. 25331, 2011-Ohio-1516, ¶ 21. Although he has not forfeited plain error, he has not argued plain error in his brief so we will not address the issue. *State v. Ricks*, 9th Dist. Medina No. 09CA0094-M, 2010-Ohio-4659, ¶ 13.

45

*Id.*  Thomas did not timely appeal to the Supreme Court of Ohio, and that court later denied Thomas's motion for delayed appeal.

The Magistrate Judge concluded that Ground Two was procedurally defaulted because Thomas's trial counsel failed to make a contemporaneous objection at trial, and the state appellate court denied the claim on that basis.[19]  (Doc. No. 29 at p. 35.)  The Magistrate Judge further noted that Thomas "does not acknowledge that this claim [is] procedurally defaulted and makes no effort to excuse the default."  (*Id.*)  Finally, the Magistrate Judge stated that "even if this claim were not procedurally defaulted, admission of this testimony was proper and did not violate the confrontation clause." (*Id.*)

> Thomas's Objection to the Magistrate Judge's analysis, in its entirety, is as follows:
>
> Mr. Thomas objects to the Magistrate's analysis of Ground Two. Doc.#29, PageID # 1550. The Magistrate cites no law, not even in a footnote, in reaching the conclusion that the issue is procedurally defaulted.  Further, the Magistrate omits a critical fact; the victim's girlfriend was allowed to testify that the victim was afraid of Mr. Thomas's cousin. The Magistrate omits that the cousin was on trial as the co-defendant in this case. Mr. Thomas objects. Ground Two is set forth below for the court's convenience and for its de novo review.

(Doc. No. 32 at p. 42.)   For the following reasons, the Court finds Thomas's Objection to be without merit.

In Ohio, a petitioner waives an alleged error when he fails to make a contemporaneous objection. *Osborne v. Ohio,* 495 U.S. 103, 124 (1990) (recognizing Ohio's long-standing

---

[19] The Court notes that this claim is further defaulted because Thomas failed to timely appeal from the June 2015 state appellate court decision, and his motion for leave to file delayed appeal in the Supreme Court of Ohio was denied. However, the Magistrate Judge apparently excused this default of the claim on the basis of Levine's failure to either advise Thomas of the June 2015 state appellate court decision or file a timely appeal therefrom.  As set forth above, Ground Two is nonetheless defaulted for the independent reason that defense counsel failed to raise a contemporaneous objection at trial.

contemporaneous objection rule).  Moreover, the Sixth Circuit has held that Ohio's "contemporaneous objection rule is an adequate and independent state ground barring federal habeas review."  *See Biros v. Bagley*, 422 F.3d 379, 387 (6th Cir. 2005); *Awkal v. Mitchell,* 613 F.3d 629, 648–649 (6th Cir. 2010) (citing *Lundgren*, 440 F.3d at 765); *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001).

In his Traverse, Thomas did not challenge Respondent's argument that this claim is procedurally defaulted, nor did he argue that there is cause and prejudice to excuse the default. (Doc. No. 28 at p. 31.)  In addition, aside from generally stating that the Magistrate Judge failed to cite authority for his procedural default analysis, Thomas does not raise any specific argument with regard to the issues of procedural default, cause or prejudice, in the specific context of Ground Two.  (Doc. No. 32 at p. 42.)

Nonetheless, the Court has reviewed Ground Two *de novo* and finds that it is procedurally defaulted.  Thomas does not direct this Court's attention to anything in the trial record indicating that defense counsel objected to Ms. White's testimony on the basis of the Confrontation Clause.[20] Accordingly, the first three elements of the *Maupin* test are satisfied as (1) Thomas failed to comply with the contemporaneous objection rule, (2) the state appellate court actually enforced the rule, and (3) the rule constitutes an "independent and adequate" state ground on which the state can foreclose federal review.  As such, and in the absence of any meaningful opposition on this issue, the Court finds Ground Two of the instant Petition is procedurally defaulted.  The Court further finds that Thomas has neither presented any cause for his default nor has he presented a credible claim of actual innocence.

---

[20] While defense counsel did object to this testimony on the grounds that it was hearsay, Thomas does not direct this Court's attention to anything in the record indicating that an objection was raised on the basis of the Confrontation Clause. (Doc. No. 23-3 at Tr. 270-275.)

47

Accordingly, and for all the reasons set forth above, the Court finds that Thomas's Objections are without merit. Ground Two is dismissed as procedurally defaulted.

### C. Ground Three -- Sufficiency of the Evidence

In Ground III, Thomas contends that there was insufficient evidence to convict him of Aggravated Murder "and related charges." (Doc. No. 1 at p. 12.) Thomas asserts that the "the State's case was circumstantial and weak," noting that "the State primarily relied on cell phone records and two videos from security cameras to implicate Thomas." (Doc. No. 28 at p. 32.) He argues that this evidence is insufficient to prove his guilt, particularly given that no forensic evidence or eye witness testimony linked him to the crime; neither the murder weapon or the shell casings were ever found; and Thomas himself testified at trial that he did not commit the crime. (*Id*.)

This claim was presented on direct appeal to the state appellate court, which rejected it on the merits as follows:

{¶ 10} Mr. Thomas next argues that his convictions were not supported by sufficient evidence. Whether a conviction is supported by sufficient evidence is a question of law, which this Court reviews de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In making this determination, we must view the evidence in the light most favorable to the prosecution:

An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 11} Mr. Thomas argues that the only evidence that he was involved in Mr. Golden's murder was circumstantial. He argues that, although he was driving a similar vehicle on the morning of the shooting, his sweatshirt was maroon, not red, and he did not have on a black hat. He notes that, given the large coverage area of cell phone towers,

48

the fact that his cell phone communicated with a tower that was in the same area of the city as the shooting around the time of the shooting does not mean he was the shooter. He also notes that no one obtained the license plate number of the Rendezvous that was involved in the shooting. According to Mr. Thomas, there was also no evidence that he had the prior calculation and design to kill Mr. Golden or that he was involved in the destruction of Poon's Rendezvous. He further argues that there was no evidence that he ever had possession of a gun.

{¶ 12} "Circumstantial evidence and direct evidence inherently possess the same probative value." *Jenks* at 272. Accordingly, the fact that there was no direct evidence that Mr. Thomas was responsible for Mr. Golden's death is not determinative. Regarding prior calculation and design, the Ohio Supreme Court has held that there is no bright-line test and that whether it existed depends on the facts and evidence presented in each case. *State v. Taylor*, 78 Ohio St.3d 15, 20 (1997). Some of the issues that are relevant to the determination are whether the defendant and victim had a strained relationship, whether the defendant brought a gun to a place where he knew the victim would be present, and whether he continued firing at the victim after the victim was already wounded. *Id*. at 22.

{¶ 13} Viewed in a light most favorable to the State, the evidence at trial indicated that Mr. Golden had some prior history with Mr. Thomas that made Mr. Golden concerned about his safety. At the time of the shooting, Mr. Thomas was driving the same make, model, and color vehicle as Mr. Golden's killer, was in the same part of the city, and was wearing a similarly-colored sweatshirt. Immediately after the shooting, Mr. Thomas's cell phone made several calls to his cousin's cell phone. Shortly thereafter, Mr. Thomas pulled behind a house and began to clean out the interior of the vehicle. According to a detective, the type of gun that was used to kill Mr. Golden would have ejected shell casings into the shooter's vehicle. As Mr. Thomas cleaned the car, the cousin who had been called from Mr. Thomas's cell phone arrived to help him. Finally, the night after charges were issued for Mr. Thomas, the Rendezvous he was driving on the morning of the shooting was set on fire after being painted a different color.

{¶ 14} Upon review of the record, we conclude there was sufficient evidence for the jury to convict Mr. Thomas. According to Mr. Golden's girlfriend, about nine months before this shooting, one of Mr. Thomas's cousins was killed. After the death, Mr. Golden became concerned about his safety, so he began driving his truck everywhere because its height allowed him to maintain a good view of his surroundings. The morning of the shooting, however, Mr. Golden's truck refused to start, so he had to take the station wagon instead. The fact that Mr. Golden was shot that morning suggests that the shooter had been waiting for an opportunity to kill Mr. Golden. We, therefore, conclude that the evidence supported a finding that Mr. Thomas shot and killed Mr. Golden with prior calculation and design. We also conclude that the fact that Mr. Thomas immediately drove the Rendezvous to a secure location after the

> shooting and began cleaning it out with the assistance of his cousin, as well as the fact that it was set on fire after the police began searching for Mr. Thomas in connection with the murder, is sufficient circumstantial evidence to support his conviction for tampering with evidence. R.C. 2921.12(A)(1), *State v. Glunt*, 9th Dist. Medina No. 13CA0050–M, 2014–Ohio–3533, ¶ 7 (explaining elements of tampering with evidence). Mr. Thomas's second assignment of error is overruled.

*State v. Thomas*, 2015 WL 3765579 at * 2-3.  Thomas did not timely appeal to the Supreme Court of Ohio, and that court later denied Thomas's motion for delayed appeal.

The Magistrate Judge considered this claim on the merits, applying AEDPA deference to the decision of the state appellate court.[21]  (Doc. No. 29 at pp. 35-39.)  After discussing the state appellate court's reasoning, the Magistrate Judge found that that court's decision was not an unreasonable application of *Jackson v. Virginia*, 443 U.S. 307 (1979).  (*Id.*)  Specifically, the Magistrate Judge concluded that "the Ohio appeals court appropriately set forth the evidence as it related to each charge and concluded that a reasonable juror, viewing the evidence in a light most favorable to the prosecution, could find Thomas guilty."  (*Id.*)

Thomas objects to the Magistrate Judge's analysis of this claim, arguing that "many facts concerning this claim were not presented as to other suspects and Mr. Thomas's actual innocence that are a part of this court's record and were part of the second App. R. 26(B) application."  (Doc. No. 32 at p. 43.)

A petitioner who claims that the evidence at trial was insufficient for a conviction must demonstrate that, "after viewing the evidence in the light most favorable to the prosecution, [no] rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

---

[21] The Magistrate Judge excused the default of this claim, presumably on the basis of Levine's failure to timely file a direct appeal to the Supreme Court of Ohio.  (Doc. No. 29 at p. 21.)

*Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  *See also Scott v. Mitchell*, 209 F.3d 854, 885 (6th Cir. 2000).  The role of the reviewing court in considering such a claim is limited:

> A reviewing court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court.  It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony.  An assessment of the credibility of witnesses is generally beyond the scope of federal habeas review of sufficiency of evidence claims.  The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim.

*Matthews v. Abramajtys*, 319 F.3d 780, 788-89 (6th Cir. 2003) (internal citations omitted).  Moreover, it is well established that '"attacks on witness credibility are simply challenges to the quality of the government's evidence and not to the sufficiency of the evidence.'"  *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002) (quoting *United States v. Adamo*, 742 F.2d 927, 935 (6th Cir.1984) *abrogated on other grounds by Buford v. United States*, 532 U.S. 59 (2001)).  See also Moreland v. Bradshaw, 699 F3d 908, 920 (6th Cir. 2012).

Consistent with these principles, the Supreme Court has emphasized that habeas courts must review sufficiency of the evidence claims with "double deference:"

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference.  First, on direct appeal, 'it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury.'  *Cavazos v. Smith*, 565 U.S. 1, ——, 132 S.Ct. 2, 4, 181 L.Ed.2d 311 (2011) (per curiam).  And second, on habeas review, 'a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'"  *Ibid.* (quoting *Renico v. Lett*, 559 U.S. 766, ——, 130 S.Ct. 1855, 1862, 176 L.Ed.2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. 650, 651 (2012).  Under this standard, "we cannot rely simply upon our own personal conceptions of what evidentiary showings would be sufficient to convince us of the

petitioner's guilt," nor can "[w]e ... inquire whether any rational trier of fact would conclude that petitioner ... is guilty of the offenses with which he is charged." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).  Rather, a habeas court must confine its review to determining whether the state court "was unreasonable in its conclusion that a rational trier of fact could find [petitioner] guilty beyond a reasonable doubt based on the evidence introduced at trial." *Id.*

Upon careful review of the trial transcript, the Court finds that Thomas's conviction for aggravated murder is supported by substantial evidence.[22]  The state appellate court accurately summarized the trial testimony and evidence of record.  As noted by the state court, evidence was introduced at trial that Golden had a history with Thomas that made Golden concerned for his safety.  Specifically, the jury heard testimony that Thomas's cousin, Reggie Woodall, had been killed at Golden's birthday party in December 2012.  (Doc. No. 23-3 at Tr. 268-270, 277; Doc. No. 23-7 at Tr. 905-906.)  Golden's girlfriend, Marcedes White, testified that, after Woodall's death, Golden feared for his safety and was concerned, in particular, about Delrico Thomas, who was also Petitioner's and Reggie Woodall's cousin.  (Doc. No. 23-3 at Tr. 272.)  In fact, after Woodall's death, Golden began driving a F150 truck because it was high up and he could see in the mirrors if anyone was following or approaching.  (*Id.* at Tr. 272, 275.)  On the morning of the shooting, however, Golden was driving a station wagon because his truck would not start.  (*Id.* at Tr. 275.)

Evidence introduced at trial showed that, at approximately 8:33 a.m. on September 18, 2013, a tan Buick Rendezvous pulled up alongside of Golden's station wagon.  (Doc. No. 23-4 at Tr. 307;

---

[22] The offense of aggravated murder is set forth in Ohio Rev. Code 2903.01(A) as follows: "(A) No person shall purposely, and with prior calculation and design, cause the death of another or the unlawful termination of another's pregnancy." Thomas was also convicted of murder, having a weapon while under disability, and tampering with evidence. However, he does not clearly argue that the evidence was insufficient to support these latter three charges and, thus, the Court deems any such argument waived.

Doc. No. 23- 5 at Tr.  627-630, 669.) The driver of the Rendezvous was an African American male wearing a black hat and red or orange hooded sweatshirt.  (Doc. No. 23-4 at Tr. 296-297, 310-311, 319-322.)  The driver of the Rendezvous fired multiple shots into Golden's station wagon, striking Golden and killing him.  (Doc. No. 23-4 at Tr. 298-299, 320-321; Doc. No. 23-4 at Tr.  446-447.) The Rendezvous then sped away.  (Doc. No. 23-4 at Tr. 298-299, 318-319.)

Thomas's cousin, Lashawnda Taylor (aka "Poon"), drove a tan Buick Rendezvous.  (Doc. No. 23-4 at Tr. 336-337.)  A short time after Golden's shooting, at 8:44 a.m., CCTV video captured Thomas driving Ms. Taylor's tan Buick Rendezvous into the backyard of an individual named Joy Strickland.  (Doc. No. 23-4 at Tr. 357; Doc. No. 23- 6 at Tr. 669.)  Several witnesses also testified to seeing Thomas with the Rendezvous in Ms. Strickland's backyard shortly after the shooting.  *See* Doc. No. 23-4 at Tr. 349-356, 377-378, 381-384, 388-390.  According to these witnesses, Thomas was wearing a maroon hoody and cleaning out of the vehicle's interior.[23]  (Doc. No. 23-4 at Tr. 349-350, 352-353, 388-390.)  Thomas's cousin and co-defendant, Delrico Thomas, arrived soon thereafter and began helping Thomas clean out the vehicle.  (*Id.* at Tr. 388-390.)

Meanwhile, Ms. White learned of the shooting, went to the scene, and gave the police the names of three possible suspects, including Petitioner and Delrico Thomas.  (Doc. No. 23-3 at Tr. 276-277.)  The police analyzed Petitioner's cell phone records and determined that his phone had been in the vicinity of the shooting at the time it occurred.  (Doc. No. 23-6 at Tr. 667.)  On September 26, 2013, one week after the shooting, the police issued charges for Thomas.  (Doc. No. 23-6 at Tr. 660.)  Early the next morning, Ms. Taylor's tan Rendezvous was found by the police.  (Doc. No. 23-

---

[23] Akron Police Officer Donald Frost testified that, if a handgun was fired inside a car, it was likely that ejected casings would remain inside the car.  (Doc. No. 23-4 at Tr. 429-431, 445-447.)

4 at Tr. 406-411, 447-449; Doc. No. 23-6 at Tr. 660-661.)  It had been painted black and set on fire. (*Id*.)

Thomas testified in his own defense.  He testified that he did not know Golden and had never met him.  (Doc. No. 23- 7 at Tr. 844-845.)  Thomas admitted that his cousin, Mr. Woodall, had been killed at Golden's birthday party but stated that he did not hold Golden responsible.  (*Id*. at Tr.  845-846, 905-906.)  He testified that, at approximately 7:30 a.m. on the morning of Golden's murder, he drove Ms. Taylor's Rendezvous to buy marijuana.  (*Id.* at Tr. 859.)  Thomas then went to his grandmother's house, where he had breakfast.  (*Id.* at Tr. 861-863.)  He left a little before 8:30 a.m and started driving to Ms. Taylor's house.  (*Id.* at Tr. 862-863.)  Thomas testified that he tried calling Delrico several times and then drove into Ms. Strickland's backyard because he dropped one of his bags of marijuana and wanted to search the Rendezvous for it.  (*Id.* at Tr. 865, 867-868.)  He acknowledged that he arrived in Ms. Strickland's backyard at 8:44 a.m., was wearing a maroon hoody, and cleaned out the Rendezvous.  (*Id*. at Tr. 867-868, 872-875.)  Thomas denied any involvement in Golden's death.  (*Id*. at Tr. 884.)  He also denied setting the Rendezvous on fire.  (*Id.* at Tr. 879.)

For the following reasons, the Court finds that the state appellate court reasonably concluded that sufficient evidence supported the jury's findings as to each element of aggravated murder.  As noted above, the State introduced evidence of a possible motive; i.e., that Thomas killed Golden in revenge for the death of his cousin, Mr. Woodall.  The State also introduced circumstantial evidence that Thomas was, indeed, the shooter, including evidence that he was in the vicinity of the shooting when it occurred; was driving the same make, model and color vehicle as Golden's killer; and was dressed in similar clothing.  Furthermore, it was not unreasonable for the state appellate court to find

sufficient evidence of prior calculation and design, given the (1) evidence of Thomas's possible motive; (2) Golden's fear that his life was in danger as a result of Mr. Woodall's death; and (3) the fact that the shooting occurred on a day when Golden was not driving his truck, which would have afforded him a better view of his surroundings.

The Court acknowledges that the evidence presented by the State was entirely circumstantial. The Supreme Court has held, however, that "[c]ircumstantial evidence ... is intrinsically no different from testimonial evidence," and that it is sufficient as long as the jury is convinced beyond a reasonable doubt.  *See Holland v. United States*, 348 U.S. 121, 138-140 (1955).  *See also Desert Palace, Inc. v. Costa,* 539 U.S. 90, 100 (2003) (stating that "we have never questioned the sufficiency of circumstantial evidence in support of a criminal conviction, even though proof beyond a reasonable doubt is required").  Thus, the fact that Thomas's conviction was based on circumstantial evidence is not, standing alone, sufficient to show that it was not supported by the evidence under the standard set forth in *Jackson v. Virginia, supra*.

Thomas nonetheless asserts that his conviction is not supported by sufficient evidence, in part, based on his own testimony that he did not commit the offense.  This argument is without merit.  It is well established that the credibility of witness testimony was outside the scope of the state appellate court's consideration of Thomas's claim of insufficient evidence. [24]  *See Martin*, 280 F.3d at 618.  Rather, the state appellate court properly considered all of the evidence in the light most favorable to

---

[24] As explained by the U.S. District for the Southern District of Ohio, "under Ohio law, a claim that a verdict was against the manifest weight of the evidence - as opposed to one based upon insufficient evidence - requires the appellate court to act as a 'thirteenth juror' and review the entire record, weigh the evidence, and consider the credibility of witnesses to determine whether 'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Hess v. Eberlin*, 2006 WL 2090093 at *7 (S.D. Ohio 2006), quoting *State v. Martin*, 20 Ohio App.3d 172,175, 485N.E.2d 717 (Ohio Ct. App.1983).  Because a federal district court does "not function as an additional state appellate court, vested with the authority to conduct such an exhaustive review," this Court cannot consider whether Thomas's conviction was against the manifest weight of the evidence. *Id.*

the State and determined there was sufficient evidence to convict him.  The standard of review applied by the state appellate court coincides with the standard for sufficiency of the evidence set forth in *Jackson, supra*.  Thomas points to no federal legal precedent requiring the state appellate court, in the context of a challenge to the sufficiency of the evidence, to engage in the evidence-weighing that he requests.

Thomas also asserts that his convictions are not supported by sufficient evidence based on "facts concerning this claim that were not presented as to other suspects and Thomas's actual innocence."  (Doc. No. 32 at p. 43.)  This argument is also without merit.  In applying *Jackson*, this Court must limit itself to evidence adduced during trial because a "sufficiency of the evidence review authorized by Jackson is limited to 'record evidence'" and "does not extend to non-record evidence, including newly discovered evidence."  *Herrera v. Collins*, 506 U.S. 390, 402 (1993) (citing *Jackson*, 443 U.S. at 318).  *See also Group v. Robinson*, 158 F. Supp.3d 632, 665 (N.D. Ohio 2016) (habeas review of sufficiency of the evidence claims is "limited to the evidence adduced during trial"); *Payton v. Perry,* 2011 WL 3862406 at * 7 (E. D. Mich. July 22, 2011), *report and recommendation adopted by* 2011 WL 3862381 (Aug. 31, 2011) (same); *Eley v. Bagley*, 2006 WL 2990520 at * 22 (N.D. Ohio Oct. 18, 2006) (same).  Here, it is uncontested that the police reports discussed in connection with Thomas's actual innocence argument, *supra*, were not admitted as exhibits at trial or otherwise presented to the jury.  Under the authority noted above, any evidence not presented to the jury is simply not part of the sufficiency of the evidence analysis on habeas review.

Accordingly, Thomas's Objection is without merit and overruled.  Thomas's sufficiency of the evidence claim is denied on the merits.

### D.  Ground Four – Ineffective Assistance of Appellate Counsel

In Ground Four, Thomas asserts a claim of ineffective assistance of appellate counsel based on appellate counsel's failure to inform him of the state appellate court's June 2015 direct appeal decision affirming his convictions and sentences.  (Doc. No. 1.)  The entirety of Thomas's discussion of this claim in his Traverse is as follows:

> Direct appeal counsel never informed Thomas of the Court's decision. As a result, Thomas had to pursue a *pro se* delayed appeal to the Ohio Supreme Court. Thomas was prejudiced by counsel's action because he would have pursued a timely appeal if counsel had told him of the Court's decision and there is a reasonable probability that the Ohio Supreme Court would have accepted a timely appeal and granted him relief. In addition, Thomas would have pursued all other available avenues of relief more quickly than he did to secure his release from prison. *See generally Glover v. Birkett*, 679 F. 3d 936 (6th Cir. 2012), *Hardaway v. Robinson,* 655 F.3d 445 (6th Cir. 2011).

(Doc. No. 28 at p. 33.)

The Magistrate Judge found that Thomas had established cause to excuse the procedural default of this claim, but concluded that he "cannot establish prejudice from this Court not considering the issues he attempted to raise with the Ohio Supreme Court."  (Doc. No. 29 at p. 40.)  Specifically, the Magistrate Judge found that each of the claims raised in Thomas's motion for leave to file delayed appeal to the Supreme Court of Ohio (i.e., Confrontation Clause, sufficiency of the evidence, and manifest weight of the evidence) were without merit as federal habeas claims.  (*Id*.)

Thomas's Objection to the Magistrate Judge's analysis is, in its entirety, as follows:  "While it is true that the manifest weight of the evidence claims are not cognizable in federal court, the issue presented is whether counsel was constitutionally ineffective under *Evitts* and the Sixth and Fourteenth Amendments.  Clearly [ineffective assistance of appellate counsel] is cognizable in a federal habeas case."  (Doc. No. 32 at p. 46.)

Thomas's Objection is without merit. Even assuming *arguendo* that this claim is not procedurally defaulted,[25] Thomas has not shown that he is entitled to relief on his ineffective assistance of counsel claim under *Evitts v. Lucey,* 469 U.S. 387 (1985), *Glover v. Birkett*, 679 F.3d 936 (6th Cir. 2012), or *Hardaway v. Robinson*, 655 F.3d 445 (6th Cir. 2011).  Unlike Thomas (who successfully appealed his conviction and sentence to the state appellate court), the petitioners in *Evitts*, *Glover,* and *Hardaway* were each completely denied their first direct appeal as of right to their respective state appellate courts due to the ineffectiveness of appellate counsel.  For example, in *Evitts*, after petitioner was convicted of a drug offense in Kentucky state court, his retained counsel filed a timely notice of appeal but failed to include a "statement of the appeal" in  his appellate brief as required by Kentucky procedural rules.  *Evitts,* 469 U.S. at 389.  The state appellate court dismissed the appeal on that basis, and the Kentucky Supreme Court affirmed the dismissal in a one sentence order.  *Id.*  Evitts then raised a claim of ineffective assistance of appellate counsel in his federal habeas petition, which was granted by the district court and affirmed by the Sixth Circuit.  *Id.*  The United States Supreme Court affirmed.  The Court held that the Due Process clause guarantees a criminal defendant the effective assistance of counsel in his first appeal as of right.  *Id.* at 396-397.  Because direct appeal to the Kentucky appellate courts was the Evitts' first appeal as of right, and he was deprived of that right due to the ineffectiveness of his appellate counsel, the Supreme Court found that Evitts was entitled to habeas relief.  *Id.*

Faced with similar circumstances, the Sixth Circuit in *Glover* and *Hardaway* granted habeas relief where the petitioners therein were entirely deprived of their first appeal as of right due to the

---

[25] The Court notes that Thomas failed to raise this claim in either his first or second 26(B) Applications.

ineffectiveness of their appellate counsel.  *See Glover*, 679 F.3d at 937-938 (conditionally granting habeas petition where appellate counsel failed to timely appeal Glover's conviction and sentence to the Michigan appellate court and Glover's subsequent motion for delayed appeal in the state appellate court was denied, thus depriving him of his first appeal as of right); *Hardaway*, 665 F.3d at 447, 449-451 (conditionally granting habeas petition where timely notice of appeal was filed but appellate counsel thereafter failed to file an appellate brief and his subsequent delayed application for leave to appeal was denied as untimely, thus depriving him of his first appeal as of right).

Here, however, Thomas was not deprived of his first appeal as of right.  As discussed *supra,* Thomas timely appealed his convictions and sentence, and his appointed counsel (Paul Grant) timely filed an appellate brief on his behalf, raising three grounds for relief.  The state appellate court considered these claims and affirmed Thomas's convictions and sentence.  *See State v. Thomas*, 2015 WL 3765579 (Ohio App. 9th Dist. June 17, 2015).  Although Thomas asserts that he was prevented from further appealing to the Supreme Court of Ohio due to his appellate counsel's ineffectiveness, an appeal to the Ohio Supreme Court on direct appeal is *not* a first appeal as of right.  *See, e..g, Riffel v. Erwin*, 2005 WL 1398496 at * 8 (S.D. Ohio June 14, 2005).  Rather, an appeal to the Ohio Supreme Court from a felony conviction in a non-capital case is a jurisdictional appeal which the Ohio Supreme Court may allow or disallow in its discretion.  *See* Ohio S. Ct. Prac. Rules 5.01, 5.02(A)(2), 7.08(B)(4).  Accordingly, the decisions in *Evitts, Glover,* and *Hardaway* are distinguishable from the instant action.

As the Magistrate Judge noted, the alleged failure of Thomas's appellate counsel to inform him of the deadline to appeal to the Ohio Supreme Court may, under certain circumstances, constitute cause to excuse the default of claims that are brought on direct appeal to the state appellate court but

not timely appealed to the state supreme court.  The Magistrate Judge found that Thomas could not establish prejudice, however, because each of the claims raised in Thomas's motion for leave to file delayed appeal to the Supreme Court of Ohio (i.e., Confrontation Clause, sufficiency of the evidence, and manifest weight of the evidence) were without merit as federal habeas claims.  (Doc. No. 29 at p. 40.)

The Court agrees.  As discussed at length *supra*, Thomas's sufficiency of the evidence claim (i.e., Ground Three) is without merit.  Further, Thomas does not contest that manifest weight of the evidence claims are not cognizable in federal habeas proceedings. (Doc. No. 32 at p. 46.)  Finally, even if Thomas had raised his Confrontation Clause claim on direct appeal to the Ohio Supreme Court, it is defaulted because his trial counsel failed to raise a contemporaneous objection at trial. [26]

Accordingly, Thomas's Objection is without merit and overruled.  Ground Four is denied for the reasons set forth above.

### E.    Ground Five—Actual Innocence

Finally, in Ground Five, Thomas asserts a free-standing claim of actual innocence.  (Doc. No. 1.)  The Magistrate Judge concluded that this claim should be dismissed as non-cognizable.  (Doc. No. 29 at p. 41.)  Thomas objects on the grounds that actual innocence is a "gateway" to his ineffective

---

[26] In his direct appeal, Thomas also argued that the trial court erred in allowing the introduction of Ms. White's testimony regarding statements made to her by Golden, on hearsay grounds.  The state appellate court rejected this claim on the merits, finding that Ms. White's testimony was not hearsay because it did not involve an assertion of fact but concerned the victim's state of mind.  *State v. Thomas,* 2015 WL 3765579 at * 2.  Thomas does not raise a habeas claim herein based on the argument that Ms. White's testimony constituted inadmissible hearsay that violated his Due Process rights. Nonetheless, in the context of examining Sub-claim F of Ground One, the Magistrate Judge noted that the Sixth Circuit has held that "no Supreme Court precedent existed that precluded, as violative of the defendant's due process rights, the admission of state-of-mind evidence that the murder victim feared the defendant."  (Doc. No. 29 at p. 33) (citing *Apanovitch v. Houk*, 466 F.3d 460, 487 (6th Cir. 2006)).  Thomas does not address this hearsay claim and raises no specific Objection to the Magistrate Judge's analysis.

assistance of counsel claims, and that the Magistrate Judge failed to fully consider his newly discovered evidence of innocence.  (Doc. No. 32 at pp. 47-48.)

The Court has already considered, and rejected, Thomas's gateway actual innocence arguments in the context of discussing the procedural default of his ineffective assistance of appellate counsel claims.  To the extent Thomas is asserting a free-standing claim of actual innocence, the Court agrees with the Magistrate Judge that such a claim is not a cognizable claim for federal habeas relief.  *See Herrera,* 506 U.S. at 400; *Cress v. Palmer*, 484 F.3d 844, 854 (6th Cir. 2007) (noting that this court has "repeatedly indicated that [free-standing claims of actual innocence] are not cognizable on habeas."); *Thomas v. Perry*, 553 Fed. Appx. 485, 487 (6th Cir. 2014) (same).

Accordingly, Thomas's Objection is without merit and overruled.  Ground Five is denied as non-cognizable.

## IV.    Conclusion

For the foregoing reasons, Petitioner's Objections (Doc. No. 32) are overruled, the Report & Recommendation (Doc. No. 29) is adopted as set forth herein, and the Petition (Doc. No. 1) is denied. In addition, Petitioner has not sufficiently demonstrated the need for an evidentiary hearing and his request for the same is denied.  Further, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith, and that there is no basis upon which to issue a certificate of appealability. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

**IT IS SO ORDERED.**

 *s/Pamela A. Barker*
PAMELA A. BARKER
Date: September 30, 2020                    U. S. DISTRICT JUDGE

61